## TALENT AGREEMENT

This "Principal Agreement" together with the attached "Standard Terms" (collectively, the "Agreement") is dated as of June 17, 2017 ("Effective Date") and is made by and between Barstool Sports, Inc. ("Barstool" "we", "us" or "our") and Michael David Productions, Inc. c/o I AM RAPAPORT ("Lender") furnishing the services of Michael Rapaport ("Artist," "you" or "your") regarding Barstool's engagement of you, as an independent contractor, to provide your services as talent as described herein

1. **Your Content Commitments:** You agree to produce, edit and deliver to Barstool the following content ("Content") to be delivered in a format and on timelines mutually agreed upon by the parties:

   a) A frequent "rant" video of 30 seconds to 2 minutes in length (preferably daily but in no event less than 2 per week) ("Rants").
   b) A recurring podcast airing up to 3 times per week (the "Podcast"). Barstool agrees that the Podcast may be a continuation of, and utilize the same name as, your current "*I Am Rapaport*" podcast. The Podcast will be hosted, managed and monetized exclusively by Barstool. The Podcast shall launch on the Barstool platform on June 17, 2017
   c) Digital shorts and other short form digital content to be mutually agreed upon and subject to the parties' agreement (after good faith negotiation) regarding ownership, responsibility for costs and split of revenue in connection therewith.

2. **Your Other Commitments:** In addition to the above, you agree to:
   a) Use best efforts to refer to yourself as "Michael Rapaport from Barstool Sports" whenever you are ranting or providing your opinions on sports, current events or pop culture through any media (e.g., interviews, guest appearances) except when your appearance is in connection with your promotion of a third party project (e.g., a movie or television project).
   b) Regularly and actively consult with Barstool, as and when reasonably requested by Barstool (but subject to your professional availability), regarding Barstool's internal projects.

3. **Merch** Subject to the mutual approval of the parties in each instance, Barstool may produce, distribute, sell and promote merchandise (including apparel) based on or associated with you and/or your Content ("Approved Merchandise").

4. **Barstool Commitments:** In support of your involvement, solely during the Term, Barstool agrees to:
   a) Host and distribute the Content on the Barstool platform.
   b) Reasonably promote the Content and your involvement with Barstool.
   c) Make its production studios available to you for your use in producing the Content at the sole cost of Barstool.
   d) Handle all backend administration related to the hosting and

|   |   |   |
|---|---|---|
|   |   | distribution of the Content on the Barstool platform, including technology, maintenance, sales, and operations.<br>e) Handle all aspects of the manufacture, inventory, sale, fulfillment and promotion of Approved Merchandise.<br>f) Use good faith efforts to promote you and your brand to, and to connect you with, its network of contacts (e.g., television producers) subject to your prior written approval in each instance.<br>g) Provide coach class airfare and first class hotel accommodations in the event Barstool ever requires you to travel in order to perform your services hereunder. |
| 5. | Term: | Starting on the Effective Date and continuing for 1 year thereafter (the "Term"). Notwithstanding the foregoing, either party may terminate this Agreement for convenience upon 90 days' written notice to the other at any time during the Term (which will not relieve you of your obligations to deliver episodes of the Content during such 90 day period after the notice unless Barstool is in material breach of this Agreement). |
| 6. | Non-Exclusive: | Subject to the specific exceptions described below, your services hereunder will be non-exclusive to Barstool and you will be free throughout the Term to provide your services as talent (including as an actor, host, or guest) to others. |
| 7. | Exceptions to Non-Exclusivity | Notwithstanding Section 6 above, you agree that during the Term:<br>a) You will not publish or distribute any Rants through any third party media whatsoever other than the Barstool platform, including your own social media channels. You can, however, retweet or share through your own social media channels any Rant published through any of the Barstool channels at any time.<br>b) Unless otherwise agreed by Barstool, you will not host any new podcasts or radio shows for yourself or others except the Podcast and Ya Never Know with Michael Rapaport and John Hansen on Sirius XM & The Two Man Weave with Michael Rapaport and Kenyon Martin on TuneIn Radio. For the sake of clarity, nothing herein prohibits you from appearing on third party podcasts, radio shows or other programs as a guest.<br>c) Barstool acknowledges that your current podcast will be distributed through CBS until its June 17th launch on the Barstool platform. |
| 8. | Fixed Compensation / Guarantees: | In consideration for your services hereunder and grant of rights herein, Barstool will pay you the following amounts:<br>a) With respect to the Rants, a guarantee of $200,000 ("Rant Guarantee") which will be applicable to and recoupable from amounts due to you pursuant to your applicable Revenue Splits related to the Rants as described below.<br>b) With respect to the Podcast, a guarantee of $400,000 ("Podcast Guarantee") which will be applicable to and |

recoupable from amounts due to you pursuant to your applicable Revenue Splits related to the Podcast as described below.

9. **Revenue Splits:** Subject to Barstool's right to recoupment described in Section 8 above, Barstool will also pay you the following "Revenue Splits":
   a) 60% of Rant Revenue. "Rant Revenue" is defined as 100% of gross sums actually received by or credited to Barstool or its affiliated companies directly arising from the Rants from all sources worldwide, in all media now known or hereafter devised, including without limitation advertising and sponsorships, download revenue, and distribution/licensing fees, less only an amount equal to 100% of the Rant Guarantee (which will be recouped from your share of Rant Revenue from dollar one).
   b) 60% of Podcast Revenue. "Podcast Revenue" is defined as 100% of gross sums actually received by or credited to Barstool or its affiliated companies directly arising from the Podcast from all sources worldwide, in all media now known or hereafter devised, including without limitation advertising and sponsorships, download revenue, and distribution/licensing fees, less only an amount equal to 100% of the Podcast Guarantee (which will be recouped from your share of Podcast Revenue from dollar one).
   c) 60% of Net Merchandise Revenue. "Net Merchandise Revenue" is defined as 100% of gross sums actually received by or credited to Barstool or its affiliated companies directly arising from the sale of Approved Merchandise less (i) any and all third party fees, expenses and commissions, (ii) Barstool's actual verifiable costs and expenses relating to the production, distribution, licensing, sale, advertising and promotion of the Approved Merchandise, and (iii) returns, allowances and discounts.

10. **Accounting:** Of the combined $600,000 for the Rant Guarantee and Podcast Guarantee, $200,000 will be paid within ten (10) business days of the execution of this Agreement, and the remaining $400,000 will be paid in three equal installments within thirty (30) days of the end of the 2nd, 3rd and 4th quarters of the Term. Each payment hereunder shall be deemed to be allocated 1/3rd towards the Rant Guarantee and 2/3rds towards the Podcast Guarantee.

Your Revenue Splits will be paid within thirty (30) days of the end of each quarter during which such net revenues are generated (and shall continue to be payable after expiration or certain instances of termination as described in more detail in Section 3(c) of the Standard Terms).

All payments of your Revenue Splits hereunder will be accompanied by a report detailing the applicable calculation of revenue earned in the preceding quarter. You shall have the

right to audit the books and records of Barstool upon reasonable advance written notice, but no more than once during the Term. Barstool shall pay the cost of an audit if an underpayment to you equal to 5% or more is revealed.

11. **Ownership:** As described in more detail in the Standard Terms, Barstool will own and retain all intellectual property rights in and to all Content other than the Podcast and you will own and retain all intellectual property rights in and to the Podcast, subject to an exclusive license back to us for the purposes hereunder.

12. **Weekly Show** Barstool will use good faith efforts to secure an opportunity for you to produce and host a 1-2 hour, weekday (i.e., 5 days a week) show in a format to be agreed upon by the parties (e.g., a Sirius radio show, a terrestrial radio show, a podcast, a video series) ("Weekly Show"). In the event such a Weekly Show comes to fruition, Barstool will pay you a fixed fee of $375,000, unless otherwise agreed ("Weekly Fee"). The Weekly Fee will cover your fee, as well as any fees you choose to pay to co-hosts or producers. The Weekly Fee will be paid directly to you and you will be solely responsible for any payments due to your co-hosts or producers.

13. **Distribution / Monetization:** Except as otherwise described herein, Barstool will have the exclusive right to distribute the Content through any and all media, including through the Barstool Sports Podcast Network, our social media channels, and via download through third party marketplaces. In addition, you agree that Barstool can (and has the sole right to) sell advertising and sponsorships, and otherwise monetize the Content, by any means in our sole discretion. Notwithstanding any of the foregoing, Barstool acknowledges your pre-existing relationships with The LA Clippers, DraftKings Fandango / Rotten Tomatoes and Casper and agrees that you shall have the right to continue such relationships during the Term; Barstool further acknowledges that it shall have no right to any sums paid to you under any of the related agreements with those companies.

14. **Production / Delivery:** Except to the extent you choose to utilize our production facilities (which we will provide to you at no cost), you are solely responsible for producing and delivering the Content, and all expenses related thereto, including production expenses.

15. **Insurance:** Barstool shall add you as an additional insured on Barstool's general liability and errors and omissions insurance policies in connection with the Content, if any, during customary periods of production and distribution of the Content, subject to the limitations, restrictions, and terms of said policy.

16. **Promotion** You agree throughout the Term to use reasonable efforts to promote the Content and your involvement with Barstool through all of your social media accounts.

Notwithstanding the foregoing, you agree to refrain from making

any announcement about this deal until a mutually approved press release or announcement is issued by Barstool.

17. **Loanout Company:** Your services hereunder are rendered through Lender, as such, the following provisions shall apply:
   a) All references to "you" or "your" in this Agreement shall be deemed to be references to Lender and you jointly.
   b) Lender and you represent and warrant that Lender has the full right, power and authority to enter into this Agreement and grant the rights granted to Barstool herein without the consent of any third party, and that neither Lender nor you is subject to any conflicting obligation or any disability which will or might prevent Lender or you from the performance of this Agreement.
   c) Payments of compensation hereunder will be made to Lender and not to you. In the event Barstool is subjected to any expenses or other liability by reason of a failure to withhold, report or pay taxes in connection with the compensation payable hereunder, Lender and you shall indemnify and hold Barstool harmless therefrom.
   d) Artist confirms that (i) you have read and understand the Agreement, and (ii) Lender has the authority to grant the rights and furnish your services in accordance with the provisions hereof. Further, as a material inducement to Barstool, Artist agrees to abide by and be personally bound by the terms and provisions of this Agreement as if Artist were a direct party hereto, and to look solely to Lender for payment of all compensation due in connection with Artist's services and grant of rights hereunder.

This Principal Agreement and the Standard Terms attached hereto expresses the entire understanding between the parties hereto and replaces any and all former agreements, negotiations or understandings, written or oral, relating to the subject matter hereof, provided that in the event of a discrepancy between the terms of this Principal Agreement and the Standard Terms, the Principal Agreement shall control.

ACCEPTED AND AGREED TO:

LENDER

By: Michael Rapaport
Its: Authorized Signatory

BARSTOOL SPORTS, INC.

By: _____
Its: Erika Nardini

ARTIST

By: Michael Rapaport

08032-00003/2719805.6      5

## STANDARD TERMS

The following sets forth Barstool's Standard Terms, which are hereby incorporated into your Agreement. Any capitalized terms not defined herein have the definition set forth in the Principal Agreement.

1. Obligations.

    a. Delivery. You agree to deliver each episode of the Content according to Barstool's technical specifications and timelines as laid out in the Principal Agreement. Each episode will meet Barstool's production standards and be of a quality commensurate to previously delivered and accepted episodes and/or Barstool's other content.

    b. Prohibited Topics. You agree that while Barstool encourages you to be you, and recognizes that certain topics may generate controversy, in no event should any episode of the Content include content which (i) is racist or homophobic; (ii) would constitute harassment, (iii) promotes illegal behavior, (iv) infringes upon the intellectual property rights of any third party or (v) violates the right of privacy of any individual.

2. Intellectual Property.

    a. Ownership. You agree that the all Content other than the Podcast (collectively, "Barstool Content"), and the results and proceeds of your services in connection with the Barstool Content, including all content, materials and other work product created in connection with the Barstool Content, will be deemed "works made for hire" for Barstool under the US Copyright Act and Barstool will be deemed the author and owner of all rights therein. To the extent any of such rights do not reside in Barstool, you hereby assign any and all applicable rights, including copyrights and trademark rights (including all rights in the applicable title(s)) in the Barstool Content to Barstool. As sole owner of the Barstool Content and all rights therein, Barstool's rights will include, without limitation, the right to exploit (or choose not to exploit) the Barstool Content in any and all media, to edit, adapt and otherwise modify the Barstool Content, to license rights to third parties and to create derivate works based on the Barstool Content. Without limiting any of the foregoing, you hereby waive any rights you may have known as "droit moral" or "moral rights" or any similar rights under any laws of the world. To ensure Barstool's sole ownership of all rights in and to the Barstool Content, you expressly agree that, with respect to any third parties who perform services on the Barstool Content (including talent, producers, engineers, mixers and other contributors), you will procure written agreements which transfer all rights either to you (to be assigned to Barstool under this provision) or directly to Barstool. You will provide us with copies of all such agreements upon our request.

    b. Barstool IP. Barstool retains any and all rights in and to Barstool's trademarks, program names, brands, icons, content and other Barstool materials provided or made available to you, and you will not take any steps adverse to such rights, including registering any trademark or domain name containing a Barstool trademark. Any use by you of Barstool's trademarks (other than to factually refer to your involvement with Barstool) shall require Barstool's prior written approval.

    c. Your Licenses to Barstool. You retain sole and complete ownership of any and all rights in and to the Podcast. You grant Barstool during a worldwide, license to use, license, sell, distribute, and otherwise exploit the Podcast by any means and in any and all media, and the right to sublicense such rights to others. In addition, you grant Barstool the non-exclusive right to use your name, approved likeness, and approved biography in connection with the production, distribution, licensing, sale, advertising and promotion of the Content and your involvement with Barstool.

3. Term and Termination.

    a. The Term shall be as defined in the Principal Agreement. In addition to their rights of termination for convenience as described in the Principal Agreement, either party may earlier terminate this Agreement at any time for cause upon the other's material breach of this Agreement, which is not cured within fifteen (15) days' written notice thereof. Without limiting the foregoing, you acknowledge that Barstool has the right to take down any episode of the Content for any reason, including in the event that it violates the terms of this Agreement or is subject to a takedown notice. We also have the right to immediately terminate this Agreement upon written notice to you in the event that you engage in illegal or criminal conduct resulting in a felony conviction or engage in conduct that brings you or Barstool into public disrepute.

    b. In the event the Term is terminated by Barstool for convenience or terminated by you due to Barstool's material breach, the Rant Guarantee and Podcast Guarantee will be due and payable in full. In the event the Term is terminated for any other reason (e.g., by you for convenience or by Barstool due to your material breach), any pre-paid portions of your Guarantee will immediately be refunded to Barstool and the only amounts owed to you by Barstool will be your share of any Rant Revenue or Podcast Revenue collected by Barstool through the date of termination. The foregoing amounts shall be paid within thirty (30) days of the date of termination.

    c. Upon expiration or earlier termination of the Term, Barstool will no longer have the right to use your name/likeness rights in connection with the advertising and promotion of the previously-delivered Content, except that Barstool shall not be required to pull or modify any existing promotions, advertising or content created and distributed during the Term related to the Content that may continue to be available after the Term. In addition, after a three (3) month sell-off period, Barstool shall cease further sales of any Approved Merchandise. Barstool shall, however, continue to have the perpetual right to exhibit, display, distribute and otherwise monetize all Content previously delivered to Barstool during the Term, subject only to Barstool's continuing obligation to pay you your Revenue Splits in connection therewith.

4. Representations and Warranties.

   a. Talent. You represent, warrant and covenant that (i) you own, or have a valid license to use, all content (including any music or other recordings) contained in each episode of the Content submitted to Barstool, (ii) you have valid agreements in writing with all contributors to the Content which assign all of their rights either to you or directly to Barstool, (iii) the exercise by Barstool of the rights granted herein will not violate or infringe the rights of any third party or any applicable laws or regulations; (iv) there are no third party agreements or arrangements preventing you from entering into this Agreement nor from granting Barstool the rights herein; and (v) you will abide by your obligations under Section 1 of these Standard Terms.

   b. Barstool. Barstool represents, warrants and covenants that (i) Barstool has the full right, power, and authority to perform this Agreement; (ii) Barstool will distribute the Content in accordance with all applicable laws and regulations; and (iii) Barstool owns or controls 100% of the right title and interest in and to any content it provides to you for inclusion in the Content..

5. Indemnification.

   a. Talent. You shall indemnify and hold harmless Barstool, its parents, subsidiaries and affiliated entities, and its and their respective officers, directors, shareholders, employees and agents, from and against any and all damages, costs, judgments, penalties and expenses of any kind, including reasonable outside legal fees and expenses (other than with respect to any settlement entered into without your written consent or claim to which you have not been notified) (collectively, "Liabilities") which may be obtained against, imposed upon or suffered by such parties as a result of (i) the breach or alleged breach by you of this Agreement or any of your warranties and representations made herein; or (ii) your willful misconduct, fraud or gross negligence.

   b. Barstool. Barstool shall defend, indemnify and hold you harmless from and against any and all Liabilities which may be obtained against, imposed upon or suffered by you as a result of (i) the breach or alleged breach by Barstool of any of its warranties and representations made herein; (ii) Barstool's willful misconduct, fraud or gross negligence or (iii) any material added to the Content by Barstool; (iv) the financing, development, production, distribution, marketing, advertising, publicity and/or exploitation of the Content and/or any element thereof and/or ancillary rights therein in all media now known or hereafter devised, worldwide, in perpetuity, except to the extent you are obligated to indemnify Barstool hereunder with respect to such Content. Barstool shall not settle or compromise any claim so as to impose liability or a financial burden on you without your prior written consent, which may not be unreasonably withheld.

6. Disclaimers. Nothing herein will be construed as an agreement, promise, guarantee or warranty that that the Content will generate any amount of revenue.

7. Accounting. Barstool will account to you as described in the Principal Agreement. The accounting will be accompanied by a payment of the amount due, if any, in accordance with the accounting statement. All royalty statements will be deemed conclusive, final and binding unless specific objection in writing is given to Barstool within one (1) year after the royalty statement is delivered to you. You will not have the right to sue Barstool in connection with any royalty statement unless you commence the suit within two (2) years after the date when the statement in question was issued. You shall reimburse us on demand for any overpayments, and we may also deduct the amount thereof from any monies payable hereunder.

8. Confidentiality. Each party acknowledges and agrees that during Term, it (the "Recipient") may learn of confidential, proprietary and/or sensitive non-public information regarding the other ("Discloser") which is either marked as confidential or proprietary (or bears a similar legend) or which a reasonable person would understand to be confidential given the circumstance and nature of the disclosure, including without limitation, information regarding proprietary technology, business or marketing plans, partnerships, or personal details ("Confidential Information"). Each party acknowledges that such Confidential Information, if disclosed or used, could have a material adverse impact on the Discloser's development or exploitation of it business. Accordingly, the Recipients each agree that except pursuant to this Agreement, Recipient will not use or disclose, and will cause all of Recipient's employees, contractors, personnel, agents and representatives not to use or disclose, directly or indirectly, any Confidential Information of the Discloser, in either case without the prior written consent of the Discloser. Each party acknowledges that it will take reasonable steps, at least substantially equivalent to the steps it takes to protect its own proprietary information, to prevent the duplication or disclosure of Confidential Information of the other party, other than by or to its employees or agents who must have access to such Confidential Information to perform such party's obligations hereunder and who agree to comply with this section, provided that Barstool may disclose Confidential Information to its attorneys, accountants, financing sources, affiliates, licensors and rightsholders or as necessary to comply with law or a valid court order, in which event the disclosing party shall notify the other in advance and cooperate upon request to obtain confidential treatment of the information. Notwithstanding anything else in this Agreement, the term "Confidential Information" shall specifically exclude (i) information that is or becomes generally available to the public through no action or fault of the Recipient; and (ii) information that is known to the Recipient without restriction, prior to receipt from the Discloser under this Agreement, from its own independent sources, and which was not acquired, directly or indirectly, from the Discloser. Each party acknowledges and agrees that the misappropriation, unauthorized use or disclosure of the Discloser's Confidential Information would cause irreparable harm to the Discloser. In the event of a breach of any part of this Paragraph, each Recipient agrees that the Discloser will be entitled to equitable relief, including but

not limited to a temporary restraining order, temporary injunction and/or a permanent injunction against the Recipient. The rights of the Discloser are in addition to the rights that it may have under this Agreement, common law or statutory law.

9. Miscellaneous.

   a. Entire Agreement/Waiver. This Agreement contains the entire understanding between the parties on the subject matter hereof and supersedes all prior agreements, representations and undertakings whether oral or written. It may only be modified, supplemented or altered by a writing signed by both parties. No failure or delay on the part of either party in insisting on compliance herein or in exercising any right, power or remedy hereunder shall operate as a waiver or modification thereof; nor shall any single or partial exercise of any such right, power or remedy hereunder, preclude any other or further exercise or any other right, power or remedy hereunder.

   b. Validity of Agreement. In case any term of this Agreement shall be held invalid, illegal, or unenforceable in whole or in part, neither the validity of the remaining part of such term nor the validity of any other terms shall be affected thereby.

   c. Choice of Law. This Agreement shall be governed by the laws of the State of New York applicable to contracts to be wholly negotiated and performed therein and the laws of the United States, and any claim, dispute or disagreement with respect to this Agreement shall be submitted to the courts of the State of New York, located within New York County or if appropriate, the Federal courts within the State of New York located within New York County, which courts shall have the exclusive jurisdiction thereof.

   d. Survival. All terms and provisions hereof which, by their nature, are intended to, shall survive the termination or expiration of this Agreement.

   e. Headings. The headings contained in this Agreement are for convenience only, and shall not be used to interpret or construe any substantive provisions hereof.

   f. Force Majeure. If either party is prevented from performing any obligation hereunder by reason of an Act of God, insurrection, fire, explosion, strike, labor dispute, casualty accident, lack or failure of transportation facilities, failure of suppliers or other third parties, flood, war, civil commotion, or any law, order or decree of any government or subdivision thereof or any other cause beyond its reasonable control ("Force Majeure"), then such party shall be excused from performance hereunder to the extent and for the duration of such Force Majeure and such amount of time reasonably necessary to recover, provided the party notifies the other party of the existence of the Force Majeure, and provided also that if any event of Force Majeure continues for an aggregate total of more than eight (8) weeks, either party hereto may terminate this Agreement immediately upon notice to the other party.

   g. No Joint Venture. This Agreement creates no partnership, employment, joint relationship, joint venture, master-servant, or mutual responsibility on behalf of one party for the debts or liabilities of the other. The parties agree that you are acting as an independent contractor and as such you have the sole right to control and direct the means, manner, and method by which the services required by this Agreement will be performed, you are free to set your schedule subject to your deliver obligations, and you will furnish or procure all equipment necessary to perform hereunder except to the extent you choose to use our facilities or crews. Neither party shall have the power to bind nor obligate the other. You are solely responsible for payment of income taxes and other taxes and acknowledge that Barstool will not withhold on your behalf any sums for any state or federal taxes.

   h. Assignment. Barstool's rights hereunder may be fully and freely transferred, designated, assigned, and licensed, in whole or in part, without restriction, and shall constitute a novation, and shall be binding upon you and inure to the benefit of any such transferee, assignee or licensee. You shall have no right to assign this Agreement or your rights hereunder to any third party without Barstool's prior written approval.

   i. Third Party. This Agreement shall not be deemed to give any right or remedy to any third Person unless that right or remedy is specifically granted by us in writing to that third Person.

   j. Engagement of Counsel. You represent and warrant that you have been advised of your right to seek legal counsel of your own choosing in connection with the negotiation and execution of this Agreement and you have been given a reasonable time to engage such counsel. You irrevocably agree that your failure to retain the services of an attorney to review and negotiate this Agreement shall not thereafter be used by you as the basis for termination or modification of this Agreement.

   k. Counterparts. This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, whether by electronic mail, facsimile or otherwise, each of which when executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.