UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAEL RAPAPORT AND MICHAEL
DAVID PRODUCTIONS, INC.,

                          Plaintiffs,

   -against-

BARSTOOL SPORTS, INC, ADAM SMITH,
KEVIN CLANCY, ERIC NATHAN
AND DAVID PORTNOY,

                         Defendants.
-------------------------------------------------------------------x

**COMPLAINT**

_____ CV _____

Plaintiffs Michael Rapaport and Michael David Productions, Inc. ("MDP"), by and through their attorneys DeSimone & Associates, LLC, brings this breach of contract action against Defendant Barstool Sports, Inc. ("BSI") and this defamation per se action against the Defendants, BSI, Adam Smith, Kevin Clancy, Eric Nathan and David Portnoy.

## JURISDICTION AND VENUE

1.      The jurisdiction of the Court over the controversy is based upon 28 U.S.C. §1332(a)(1).

2.      The amount in controversy exceeds $75,000.00.

3.      There is complete diversity of citizenship between the parties and thus the district court has original jurisdiction.

4.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 as the acts which give rise to the claim occurred in this district and as the Defendants reside in this district.

## PARTIES

5.      Plaintiff Michael Rapaport is an actor, performer and comedian who since the early 1990s has appeared in dozens of movies and television series.  He also developed, produced and appears on his podcast, "I AM RAPAPORT: STEREO PODCAST."   At all relevant times Mr. Rapaport was and is a citizen of the State of California.

6.      Plaintiff MDP is a California corporation with its principal place of business in Los Angeles, California.

7.      Defendant BSI is a Delaware corporation with its principal place of business in New York, New York.  BSI's main business is running a sports and popular culture website at www.barstoolsports.com.

8.      Defendant Adam Smith is employed by BSI as a writer, blogger and personality. Mr. Smith posts on BSI's website using the nickname "Smitty" and posts on Twitter using the handle "@smittybarstool." Mr. Smith is a citizen of the State of New York.

9.      Defendant Kevin Clancy is employed by BSI as a writer, blogger and personality. He also hosts his own BSI podcast and appears on the Barstool Radio Show on BSI's SiriusXM channel.  Mr. Clancy posts on BSI's website using the nickname "KFC" and posts on Twitter using the handle "@KFCBarstool."   Mr. Clancy is a citizen of the State of New York.

10.     Defendant Eric Nathan is employed by BSI as a writer, blogger and personality. Mr. Nathan posts on BSI's website using the nickname "Nate" and posts on Twitter using the handle "@BarstoolNate."   Mr. Nathan is a citizen of the State of New York.

11.     Defendant David Portnoy is the founder and President of BSI and uses the nickname "El Presidente" on the BSI website and the handle "@stoolpresidente" on Twitter. Mr. Portnoy is a citizen of the State of New York.

### FACTUAL BACKGROUND

12.     Mr. Rapaport, a renowned actor, comedian and personality, in 2014 developed a podcast under the "I AM RAPAPORT: STEREO PODCAST." name and brand.  "I AM RAPAPORT: STEREO PODCAST" was broadcast on CBS Radio from approximately June 16, 2015 until June 16, 2017.  On or around this same time Mr. Rapaport also developed what was and is known as his video "rants" in which he delivers his unfiltered views on politics, sports and popular culture.

13.     On or about November 24, 2015, Mr. Rapaport appeared as a guest on Clancy's "KFC Radio" podcast on Barstool Sports.  Mr. Rapaport would appear subsequently on several occasions between May 2016 and January 2017 as a guest on the Pardon My Take" podcast on Barstool Sports.  Shortly thereafter, Mr. Rapaport began being courted by Portnoy, the President of BSI, and Erika Nardini, the CEO of BSI, to bring his "I AM RAPAPORT: STEREO PODCAST" and rants over to the Barstool Sport's platform.

14.     This courtship culminated in a May 2017 Term Sheet in which Mr. Rapaport and BSI agreed to a one-year deal whereby Mr. Rapaport and BSI agreed, *inter alia*, that BSI would host, market and oversee sales for Mr. Rapaport's I AM RAPAPORT: STEREO PODCAST." (*See* Term Sheet, Exhibit A) Additionally, BSI agreed that Mr. Rapaport would develop a daily radio show for Barstool Radio on SiriusXM. (*Id.*)  BSI agreed to pay Mr. Rapaport (i) $600,000 for his videos and podcasts and (ii) $375,000 for "an in-development daily radio show on the

Barstool Radio SiriusXM channel," contingent on BSI obtaining a SiriusXM channel. (*Id.*) The Barstool Radio SiriusXM channel lunched on or about January 17, 2018.

15.    Subsequently, on June 17, 2017, BSI, MDP and Mr. Rapaport also entered into a Talent Agreement. (*See* Talent Agreement, Ex. B).  Pursuant to the Talent Agreement, BSI agreed to guarantee payment to MDP and Mr. Rapaport of $200,000 for his video rants and $400,000 for the podcast.  Of that combined $600,000, $200,000 was to have been paid within ten days of the execution of the Talent Agreement with the remaining $400,000 to have been paid in three future equal installments.  The Talent Agreement also set forth that MDP and Mr. Rapaport were to receive 60% of the net revenue from the sale by BSI of any merchandise based on or associated with Mr. Rapaport or his content.   The Talent Agreement further set forth that MDP and Mr. Rapaport were to receive 60% of the net revenue attributable to the sale of merchandise based on or associated with Mr. Rapaport or his content.   BSI has failed to pay MDP or Mr. Rapaport the merchandise revenue as set forth in the Talent Agreement.  BSI paid the first installment on July 25, 2017.

16.    BSI announced that Mr. Rapaport was joining BSI on June 19, 2017 and his "I AM RAPAPORT: STEREO PODCAST" debuted on BSI on June 20, 2017.  Mr. Rapaport continued to produce the podcasts for BSI and perform the other tasks as set forth in the Talent Agreement.  BSI eventually paid MDP and Mr. Rapaport $400,000 of the $600,000 due under the Talent Agreement.

17.    As set forth above, the Barstool Radio SiriusXM channel launched on January 17, 2018. Despite BSI's agreement to do so, it refused to include Mr. Rapaport's daily radio show on its lineup and failed to pay Mr. Rapaport the $375,000 it had agreed to.

18.     Shortly after Mr. Rapaport joined BSI, BSI employees, personalities and bloggers began a systematic campaign to publicly and privately discredit, disparage and undermine Mr. Rapaport's relationship with BSI as well as his credibility as an actor and performer.   As examples, on November 17, 2017 BSI published a blog written by Mr. Smith entitled "Michael Rapaport is a Fraudulent Sack of Shit."   BSI and Mr. Smith followed this up by publishing a follow up blog, "Michael Rapaport is A Fraudulent Sack of Shit Part II" on February 14, 2018.

19.     This campaign included further defamatory statements.   For example, on February 17, 2018, in a tweet, Mr. Clancy referred to Mr. Rapaport as "a creepy herpes riddled failure."

20.     As a result of the campaign to sabotage Mr. Rapaport, on February 18, 2018, Mr. Portnoy, without cause or justification, publicly terminated the Talent Agreement by way of posting a video on the BSI website.   BSI refused to pay MDP or Mr. Rapaport the balance of the guaranteed payments due under the Talent Agreement.

21.     Upon BSI's wrongful termination of the Talent Agreement, BSI and its employees, bloggers and personalities, including Mr. Smith, Mr. Clancy, Mr. Nathan and Mr. Portnoy, upped the ante and took their public campaign to defame and disparage Mr. Rapaport to an entirely new level.   Shortly after BSI publicly wrongfully terminated the Talent Agreement., on February 19, 2018, BSI and Mr. Smith published the blog "Michael Rapaport is a Fraudulent Sack of Shit: Part III, the Final Chapter."

22.     Furthermore, on or about February 18, 2018, BSI and its employees, including defendants Mr. Portnoy, Mr. Smith, Mr. Nathan and Mr. Clancy, continued their campaign against Mr. Rapaport and continued to defame and discredit him by repeatedly publicly stating

through various platforms, including the BSI website, BSI SiriusXM channel and Twitter, that, among other things, Mr. Rapaport suffered from the sexually transmitted disease, herpes.  These statements were made with actual malice and with a reckless disregard for the truth.

23.     On top of this, on the same day the Talent Agreement was wrongfully terminated, BSI began selling t-shirts depicting Mr. Rapaport with a clown nose and with what BSI describes as a herpes sore beneath Mr. Rapaport's lower lip.   Mr. Portnoy announced the launch of BSI's sale of the t-shirts via twitter with the statement "Finally some Rapaport gear people will buy." BSI's marketing and sale of these t-shirts along with Mr. Portnoy's tweet was done with actual malice in an obvious effort to convey that Mr. Rapaport suffered from herpes and to harm Mr. Rapaport's reputation.

24.     That same day, Mr. Smith sent out the following tweet: "Hey @MichaelRapaport, you unfollowed me like a bitch boy and now going after my boss?  I'm still here, and will always be here, Like the herp."  Mr. Smith tweeted this statement utilizing his BSI handle with actual malice, with reckless disregard for the truth and with the intent of harming Mr. Rapaport's reputation.  Mr. Smith also tweeted that same day "That lying fraud hack Michael Rapaport is FIRED from Barstool Sports."

25,     That day, Mr. Clancy also published a blog on the BSI website which referred to Mr. Rapaport as an "old crusty herpe" and referred to Mr. Rapaport's "herpes infested mouth." Mr. Nathan joined in by penning a blog on the BSI website that referred to Mr. Rapaport as a "herpe having, race baiting, D-list actor."

26.     Shortly after BSI wrongfully terminated the Talent Agreement, Mr. Portnoy and Mr. Clancy, on the Barstool Radio with Dave Portnoy show, discussed the wrongful termination

of Mr. Rapaport and, while doing so, defamed Mr. Rapaport by discussing and stating that he suffered from herpes.   Additionally, Mr. Clancy stated during that broadcast that BSI was "literally selling a t-shirt about [Mr. Rapaport's herpes]."

27.     The campaign by BSI and its employees to malign and defame Mr. Rapaport did not simply end in February 2018.  On June 23, 2018, Nathan posted a blog on the BSI website concerning Mr. Rapaport entitled "Sad Story: D List Actor With A Slight STD Problem Traps Plane of Innocent Travelers Inside."  BSI and Nathan published this defamatory blog with actual malice, with reckless disregard for the truth and with the intent of harming Mr. Rapaport's reputation.

28.     The above defamatory statements were made either by BSI or by its employees in the course of their employment and with BSI's assent, approval and encouragement.   As discussed above, many of the defamatory statements appeared directly on BSI's website or were published on twitter by BSI employees utilizing a BSI handle.  BSI and its employees made these defamatory statements as well as others, with actual malice, with reckless disregard for the truth and with the intent that the defamatory statements would reach the maximum audience possible.  BSI and its employees did this to not only harm Mr. Rapaport but also to generate "traffic" and publicity for the BSI website and brand.

29.     Beyond this, upon information and belief, BSI and its employees continue to disparage and defame Mr. Rapaport "behind the scenes" in an effort to further hurt Mr. Rapaport's career and steer potential advertisers away from Mr. Rapaport's ongoing podcast.  As a result of BSI and its employees' actions, Mr. Rapaport has suffered harm to his reputation and career.

## COUNT I
### Breach of Contract
### (As against Defendant BSI)

30.     Plaintiffs repeats, reiterates and re-alleges each and every allegation above as though fully set forth herein.

31.     Plaintiffs and BSI entered into a valid and binding contract, specifically the Talent Agreement.

32.     Plaintiffs performed all of their obligations under the terms and conditions of the Talent Agreement.  Despite this, on February 18, 2018, BSI wrongfully terminated and breached the Talent Agreement.

33.     Of the $600,000 guaranteed under the Talent Agreement, BSI has failed to pay Plaintiffs $200,000.   Furthermore, pursuant to the terms of the Talent Agreement, BSI is obligated to pay Plaintiffs 60% of the net merchandise revenue.   BSI has failed to pay the merchandise revenue as set forth in the Talent Agreement.

34.     Plaintiffs have been damaged by BSI's breach of the Talent Agreement in an amount to be determined at trial.

## COUNT II
### Breach of Contract
### (As against Defendant BSI)

35.     Plaintiffs repeats, reiterates and re-alleges each and every allegation above as though fully set forth herein.

36.     Mr. Rapaport and BSI entered into a valid and binding contract, specifically the Term Sheet.

37.     Pursuant to the terms and conditions of the term sheet. BSI and Mr. Rapaport agreed to develop a daily radio show for Barstool Radio on SiriusXM.  BSI agreed to pay Mr. Rapaport $375,000 for the in-development daily national radio show on the Barstool Sports Radio SiriusXM channel.    The $375,000 payment was only contingent on BSI obtaining a SiriusXM channel.  BSI obtained a SiriusXM channel on or about January 19, 2018.

38.     BSI breached the agreement and has failed to pay Mr. Rapaport the agreed upon $375,000.  Mr. Rapaport has been damaged by BSI's breach of the Term Sheet in an amount to be determined at trial.

**COUNT III**
**Defamation Per Se**
**(As against all Defendants)**

39.     Plaintiffs repeats, reiterates and re-alleges each and every allegation above as though fully set forth herein.

40.     As set forth above, the Defendants published the false statements concerning Mr. Rapaport over an extended period of time utilizing not only the BSI website, but other social media platforms such as Twitter.  Defendants utilized these medium with the intent that the defamatory statements be disseminated to the widest possible audience, that they be repeated, re-tweeted and commented upon by the general public.  These statements, including that Mr. Rapaport suffers from herpes, are false in that Mr. Rapaport does not suffer from herpes and constitute defamation per se.

41.     Defendants made these statements with actual malice and made them either knowing they were false or with reckless regard as to the truth of the statements.

42.     As a result of these false statements, Mr. Rapaport has suffered damages in an amount to be proven at trial, including, but not limited to, harm to his personal and professional reputation, emotional harm, contempt and ridicule.

43.     In making the defamatory statements as set forth herein, Defendants acted with actual malice and thus is responsible for punitive damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, upon all of the facts and circumstances herein alleged, Plaintiffs respectfully requests that this Court:

a.      Grant judgement against BSI on Counts I and II;

b.      Grant judgment against all Defendants on Count III;

c.      Grant on order awarding Plaintiffs damages in an amount to be determined at trial, together with interest and the costs and disbursements of this action, plus reasonable attorney's fees, punitive damages, as well as any other damages permitted to be received by law; and

d.      Grant any such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues in this action.

Dated: New York, New York
September 25, 2018

DeSIMONE & ASSOCIATES, LLC

Ralph DeSimone (RD 5364)
David A. Beke (DB 3482)
*Attorney for Plaintiffs*
*Michael Rapaport and Michael*
*David Productions, Inc.*
745 Fifth Avenue, Suite 500
New York, New York 10151