# KING & BALLOW
## LAW OFFICES
1999 AVENUE OF THE STARS
SUITE 1100
CENTURY CITY, CALIFORNIA 90067

TELEPHONE: 424/253-1255
FACSIMILE: 888/688-0482

www.kingballow.com

February 19, 2020

*Via ECF*
Hon. Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007

  Re: **Michael Rapaport et. al., v. Barstool Sports, et. al. Case No. 1:18-cv-08783**

Dear Judge Buchwald:

  We represent Plaintiffs Michael Rapaport and Michael David Productions, Inc. (collectively "Plaintiffs") in the above referenced action. We write in response to the Parties' call with Chambers on February 12, 2020, wherein your Honor requested further guidance from the Parties concerning the IDENTIFIED WITNESS. Specifically, your Honor requested a history of events concerning the IDENTIFIED WITNESS and an explanation of how the Parties would like to use the information provided by the IDENTIFIED WITNESS.

  As your Honor will see herein, Plaintiffs' counsel has made every effort to protect the identity of the IDENTIFIED WITNESS, going so far as to offer to forego the use of his testimony, if needed, to avoid his name being publicly disclosed. Your Honor will further see that the information provided by the IDENTIFIED WITNESS has only been nominally used by the Plaintiffs and has been used in a manner duplicative of other information available to them. The loss of this information would have no impact on the Plaintiffs' expert reports as none of their experts have placed reliance upon this testimony. The testimony is certainly not "key" to Plaintiffs' damages claims as Defendants state in their letter. The testimony instead serves as a secondary source of information to further establish credibility.

  It is also ironic that it is Defendants' experts, not Plaintiffs' experts, who have placed more reliance on the IDENTIFIED WITNESS' testimony.

**A. Relevant Background**

  On September 7, 2019, Plaintiffs' counsel first learned about the existence of the Identified Witness. On September 13, 2019, Plaintiffs' counsel provided to Defendants' counsel Rule 26(A)(1) Supplemental Initial Disclosures that listed the IDENTIFIED WITNESS as potentially having information pertaining to "Plaintiffs' business opportunities before and after Barstool's termination of the Talent Agreement." The true name of the IDENTIFIED WITNESS was provided to Defendants' counsel at that time. However, no contact information was provided at that time other than place of business as Plaintiffs' counsel had yet to identify any working contact information for the IDENTIFIED WITNESS.

Hon. Naomi Buchwald
February 19, 2020
Page 2

On September 17, 2019, Plaintiffs' counsel spoke with the IDENTIFIED WITNESS for the first time. During this call, the IDENTIFIED WITNESS recounted his inability to sell advertisements for Mr. Rapaport's podcast and his understanding of why this occurred. Although the IDENTIFIED WITNESS communicated that he wished he could help, he was concerned about retaliation from Defendants. The IDENTIFIED WITNESS said that he was opposed to testifying without significant protections. Plaintiffs' counsel advised the IDENTIFIED WITNESS at that time that he could be subpoenaed by Plaintiffs for a deposition if he refused to voluntarily testify. The IDENTIFIED WITNESS replied that he did not want to be subpoenaed, and asked that he not be subpoenaed. Plaintiffs' counsel stated that he would discuss the issue internally with his clients.

On September 20, 2019, during a subsequent phone call, the IDENTIFIED WITNESS raised concerns with Mr. Winter and Plaintiffs' counsel about the Barstool Gold video that Defendants produced making fun of Mr. Winter. According to the IDENTIFIED WITNESS, the video was proof that he would be retaliated against. During that conversation, Plaintiffs' counsel agreed that in the event a stipulation could not be agreed to with Defendants' counsel that protected his identity, they would not subpoena him and would forego his testimony. Plaintiffs' counsel made clear during this call that while they would try to agree to a stipulation with Defendants' counsel, Plaintiffs' counsel did not represent the IDENTIFIED WITNESS. The IDENTIFIED WITNESS acknowledged that he understood that, and has subsequently confirmed to Plaintiffs' counsel that he was fully aware that he could have sought separate legal representation.[1]

Between September 20-27, 2019, the Parties discussed entering into a stipulation on behalf of the IDENTIFIED WITNESS. Plaintiffs' counsel made clear to Defendants' counsel that the IDENTIFIED WITNESS would not testify absent the stipulation. Defendants' counsel absolutely had the option of not agreeing to the stipulation. During these discussions, Defendants' counsel offered to enter into a stipulation that the IDENTIFIED WITNESS' identity would remain attorneys' eyes only with the exception of Barstool's CEO. The IDENTIFIED WITNESS opposed this arrangement and said he would not agree to any stipulation that allowed for his name to be disclosed to any employee of Barstool Sports. The Parties also discussed whether a stipulation would legally hold up at trial or whether the public interest in open access to information would override the stipulation. The Parties agreed to enter into an attorneys' eyes-only stipulation and to meet and confer down the road about protecting the IDENTIFIED WITNESS' identity at trial.

Importantly, the intent at this time was that the later meet and confer would be to discuss how to ensure the IDENTIFIED WITNESS' confidentiality at trial, not to contest whether his identity would remain confidential. The Parties did acknowledge however that it was possible that the IDENTIFIED WITNESS may in the future no longer be worried about retaliation and that future protections may no longer be necessary if he expressed such an opinion.

On September 27, 2019, the Parties agreed to a stipulation to keep the IDENTIFIED WITNESS' identity attorneys' eyes only. Prior to the stipulation being agreed to, Plaintiffs'

---

[1] Prior to the filing of this letter, a copy was sent to the IDENTIFIED WITNESS to confirm whether he agreed with the factual assertions contained herein. **The IDENTIFIED WITNESS confirmed to Plaintiffs' counsel by email that the information contained herein is correct.**

counsel spoke to the IDENTIFIED WITNESS over the phone and went through the stipulation line by line with him, including the line that reads, "The parties recognize that the Court ultimately will decide whether the IDENTIFIED WITNESS' identity and the identity of the IDENTIFIED WITNESS' place of employment shall be afforded protection from disclosure."

On October 4, 2019, the IDENTIFIED WITNESS spoke by phone with Plaintiffs' counsel about how he was stressed out about being deposed and contemplated no longer being deposed.

On October 7, 2019, the IDENTIFIED WITNESS stated that he had recommitted himself to being deposed as he felt it was the right thing to do. The IDENTIFIED WITNESS also expressed a desire at this time to assist Plaintiffs' experts in preparing their reports. However, to protect the IDENTIFIED WITNESS' identity, Plaintiffs never took the IDENTIFIED WITNESS up on his offer, nor connected him with their experts.

On October 8, 2019, the IDENTIFIED WITNESS was deposed by both Plaintiffs' and Defendants' counsel. Following this deposition, Plaintiffs' counsel copied the transcript provided to them by the court reporter and replaced the name of the IDENTIFIED WITNESS and his place of employment with "Mr. X" and "Company Y". This modified transcript was then provided to Plaintiffs' experts with an explanation that the names had been changed for purposes of confidentiality. This modified transcript was also provided to Defendants' counsel following the exchange of Plaintiffs' expert reports (although Defendants' counsel had a copy of the transcript from the court reporter at the same time that Plaintiffs' counsel received their copy).

On December 14, 2019, after receiving Defendants' expert reports and circulating them to their experts, Plaintiffs' counsel noticed that the IDENTIFIED WITNESS' identity was fully disclosed throughout Defendants' expert reports. This issue was immediately brought to the attention of Defendants' counsel. Defendants' counsel responded by noting that the expert reports were never shown to Defendants, nor was there any intent to do so. Defendants' counsel further assured that the IDENTIFIED WITNESS and his place of employment were never disclosed to Defendants. Defendants' counsel also expressed at this time that they sought to meet and confer about the continued confidentiality of the IDENTIFIED WITNESS' identity.

On January 6, 2020, the Parties met and conferred about the continued confidentiality of the IDENTIFIED WITNESS' identity. Plaintiffs' counsel agreed to forward an email to be authored by Defendants' counsel to the IDENTIFIED WITNESS, laying out Defendants' opposition to continued protections.

On January 7, 2020, Defendants' counsel drafted an email challenging further protections for the IDENTIFIED WITNESS' identity. Defendants' counsel offered "to tell Barstool that it should not make any public comments about [the IDENTIFIED WITNESS] and/or engage in any conduct detrimental to his clients as a result of his testimony" if he agreed to disclose his identity. In response to the email, the IDENTIFIED WITNESS called Plaintiffs' counsel and communicated that 1) he would not have agreed to be deposed if he knew there was even a chance of his name getting out and that he was still very fearful of retaliation from Barstool, 2) this retaliation would damage his reputation with his clients and result in a loss of business, and 3) he did not care about assurances from Barstool's counsel as they could not be trusted to control their clients.

Hon. Naomi Buchwald
February 19, 2020
Page 4

The IDENTIFIED WITNESS knew prior to both the stipulation being entered into and his deposition that he was not represented by counsel. After the February 12, 2019 call between counsel and Chambers, Plaintiffs' counsel reached out to the IDENTIFIED WITNESS to confirm his recollection of events. When asked if he was ever informed that he was not represented by counsel, as to both the stipulation and deposition, he said that he always understood that he was not represented by counsel but could not recall the specific language that was communicated to him. He also advised he was aware that he could have obtained separate legal representation but decided not to do so.

**B. Summary of Intended Use of Information Provided by the IDENTIFIED WITNESS**

There are three categories of information that were provided by the IDENTIFIED WITNESS and cited to by the Parties' experts. These include 1) a statement that he was unable to successfully sell advertisements for Mr. Rapaport's podcast immediately after Mr. Rapaport's termination from Barstool Sports, 2) a statement about the importance of downloads and ratings for calculating advertising rates, and 3) a description of average industry rates that he could expect to sell a podcast at.

With respect to category 1, there are numerous documents, including the depositions of Mr. Rapaport, Mr. Winter, and Miles Davis that evidence the inability to sell advertisements for Mr. Rapaport's podcast after his termination from Barstool Sports. The IDENTIFIED WITNESS' deposition is only cited to by Plaintiffs' experts with respect to category 1 to the extent that it shows another account of Plaintiffs being unable to sell advertisements for Mr. Rapaport's podcast after his termination from Barstool Sports. Sid Blum, the only one of Plaintiffs' experts who cited to the IDENTIFIED WITNESS' deposition for the purposes of category 1 even noted in his deposition that these citations were not "actually particularly relevant" to his report. Importantly, and to place the proper lens on the Defendants' arguments, Defendants did not contact any third parties to inquire about their refusal to advertise with Mr. Rapaport's podcast despite having emails from multiple third parties that were sent to Mr. Winter (not the IDENTIFIED WITNESS). Two of these emails are attached hereto as way of example. Defendants have had more than four months to contact third parties concerning these emails but have not done so.

With respect to category 2, Rena Unger is the only one of Plaintiffs' experts to cite in her report to this category of information. In her report, Ms. Unger cites to a three sentence answer wherein the IDENTIFIED WITNESS states that it is hard to sell advertisements for podcasts with low ratings. However, this citation is cumulative of Ms. Unger's own industry experience for which she provides several pages of analysis.

With respect to category 3, Mr. Blum is the only one of Plaintiffs' experts to cite in his report to the IDENTIFIED WITNESS' discussion of industry rates. However, Mr. Blum states in his report that he placed reliance upon the calculations of Ms. Unger rather than the generic, industry estimates provided by the IDENTIFIED WITNESS.

Both experts Blum and Unger denied in their depositions, in response to questions from Defendants' counsel, that they placed any reliance upon the IDENTIFIED WITNESS' testimony. In other words, none of Plaintiffs' experts have placed reliance upon the deposition testimony of

Hon. Naomi Buchwald
February 19, 2020
Page 5

the IDENTIFIED WITNESS, and to the extent he has been referenced, it has only been to provide additional context to the reader of the report.

It is also worth noting that the IDENTIFIED WITNESS' deposition testimony was cited to far more extensively by Defendants' experts than Plaintiffs' experts. However, like with Plaintiffs' expert reports, no hard reliance is placed upon the IDENTIFIED WITNESS' testimony by Defendants' experts. The categories of information cited to by Defendants' experts also align with the three categories mentioned above.

The remainder of the IDENTIFIED WITNESS' testimony that Plaintiffs may use at trial relates to his personal knowledge of Defendants and their reputation in the industry, the impact of iTunes ratings on a podcast (Mr. Rappaport went from a 4.5 star rating to a 1.5 star rating after Defendants' defamation), and the unwillingness of advertisers to collaborate with or support those who Defendants have attacked.[2]

## C. Conclusion

It is Plaintiffs' hope that the above letter has clarified the timeline of events and related usage of information as provided by the IDENTIFIED WITNESS' testimony. Plaintiffs respectfully submit that your Honor should allow the continued use of testimony provided by the IDENTIFIED WITNESS with respect to the above, and that the IDENTIFIED WITNESS and his place of employment will remain attorney's eyes only. Defendants entered into the stipulation knowing essentially what he would say, and have waited nearly 5 months to raise this issue. They also did nothing to speak to the third parties identified by Mr. Winter, or to follow up on the attached emails, despite having five months to do so. This is purely a litigation tactic by them to try to nullify an adverse witness: nothing more.

However, in the interest of the IDENTIFIED WITNESS' continued confidentiality, should your Honor feel inclined to reject the Parties' stipulation protecting his confidentiality, Plaintiffs would rather this testimony be barred from litigation as opposed to the IDENTIFIED WITNESS' name becoming public. Plaintiffs do not want to take a chance of the IDENTIFIED WITNESS being penalized for being willing to step forward as a witness in this action and telling the truth. It remains Plaintiffs' belief however that such a strong step (exclusion) should not be taken and that this letter, combined with the prior submissions to this Court, will allow the Parties to continue to use the IDENTIFIED WITNESS' testimony without endangering the IDENTIFIED WITNESS' confidentiality.[3]

---

[2] To the extent Defendants wish to contest the admissibility of this testimony, it is premature to do so at this time. If challenged it can be addressed in an appropriate motion in limine. It is, however, worth noting that Defendants have had ample opportunity to attempt to rebut this testimony through their own expert reports.

[3] Refer to Plaintiffs' Feb. 7, 2020 letter for 2nd Circuit precedent recognizing the need to retain the confidentiality of the IDENTIFIED WITNESS and to allow Plaintiffs to cite to his testimony.

Hon. Naomi Buchwald
February 19, 2020
Page 6

                                              Respectfully submitted,

                                              */s/ Richard S. Busch* (by GD w/ permission)
                                              Richard S. Busch

cc:     All Counsel