UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

MICHAEL RAPAPORT and MICHAEL DAVID PRODUCTIONS, INC.,

        Plaintiffs,

  -against-

BARSTOOL SPORTS, INC., ADAM SMITH, KEVIN CLANCY, ERIC NATHAN and DAVID PORTNOY,

        Defendants.

Case No. 1:18-CV-08783

------------------------------------- X

BARSTOOL SPORTS, INC., ADAM SMITH, KEVIN CLANCY, ERIC NATHAN and DAVID PORTNOY,

        Counterclaim Plaintiffs,

  -against-

MICHAEL RAPAPORT and MICHAEL DAVID PRODUCTIONS, INC.

        Counterclaim Defendants.

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

------------------------------------- X

-i-

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. THE ALLEGEDLY DEFAMATORY COMMENTS ARE NOT ACTIONABLE .......... 2

    A. The Entirety of the Allegedly Defamatory Comments Demonstrates that None of them Contains an Actionable Statement of Fact ...................................... 2

    B. The Broader Context of the Allegedly Defamatory Comments Also Demonstrates They Are Not Statements of Fact ....................................................... 4

    C. Plaintiffs Have Failed to Even Try to Establish Actual Malice ............................ 6

III. PLAINTIFFS' FRAUD CLAIMS ARE NOT ACTIONABLE ......................................... 7

    A. Plaintiffs' Did Not Allege Their Newfound Claims in their FAC ......................... 8

    B. Plaintiffs Cannot Establish the Elements of Fraud ................................................. 8

## TABLE OF AUTHORITIES

Page

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ......................................................................................................... 7

*Brian v. Richardson*,
   660 N.E.2d 1126 (N.Y. 1995) .......................................................................................... 2

*Celle v. Filipino Reporter Enters.*,
   209 F.3d 163 (2d Cir. 2000) ......................................................................................... 6, 7

*Church of Scientology Int'l. v. Behar*,
   238 F.3d 168 (2d Cir. 2001) ............................................................................................. 7

*Colorado v. New Mexico*,
   467 U.S. 310 (1984) ......................................................................................................... 7

*Couloute v. Ryncarz*,
   2012 WL 541089 (S.D.N.Y. Feb. 17, 2012) .................................................................... 6

*Dominick & Dominick LLC v. Deutsche Oel & Gas AG*,
   2017 WL 3669619 (S.D.N.Y. Aug. 24, 2017) ................................................................. 8

*Hayashi v. Ozawa*,
   2019 WL 1409389 (S.D.N.Y Mar. 28, 2019) .................................................................. 6

*Hobbs v. Imus*,
   698 N.Y.S.2d 25 (App. Div. 1999) .................................................................................. 6

*Immuno AG. v. Moor-Jankowski*,
   567 N.E.2d 1270 (N.Y. 1991) ...................................................................................... 2, 3

*In re Aratana Therapeutics Inc. Sec. Litig.*,
   315 F. Supp. 3d 737 (S.D.N.Y. 2018) .............................................................................. 9

*Leucadia, Inc. v. Reliance Ins. Co.*,
   864 F.2d 964 (2d Cir. 1988) ............................................................................................. 8

*Massie v. Ikon Office Sols., Inc.*,
   381 F.Supp.2d 91 (N.D.N.Y. 2005) ................................................................................. 8

*Mullenmeister v. Snap-On Tools Corp.*,
   587 F.Supp. 868 (S.D.N.Y. 1984) ................................................................................... 5

*Steinhilber v. Alphonse*,
   501 N.E.2d 550 (N.Y. 1986) ............................................................................................ 5

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Stolatis v. Hernandez*,
  77 N.Y.S.3d 473 (App. Div. 2018) ........................................................................................6

*United States v. Chimurenga*,
  760 F.2d 400 (2d Cir. 1985) ..................................................................................................7

08032-00008/3787305.12

I.      **INTRODUCTION**

Plaintiffs' Opposition (Dkt. 140) to Defendants' Motion for Partial Summary Judgment (Dkt 134) misapprehends controlling law and the standards governing summary judgment.  It is Plaintiffs, not Defendants, who bear the ultimate burden of proof on *each* element of *each* of their claims.  Defendants' only burden in moving for summary judgment was to point to an absence of evidence in support of *any* essential element of Plaintiffs' claims for defamation and fraud.  The burden then shifted to Plaintiffs to present evidence sufficient to satisfy each element of those claims.  Plaintiffs' misunderstanding of these rules pervades their Opposition.  They fault Defendants for not providing "specific facts" to support their defenses when it is Plaintiffs' job to support their claims; they criticize the introduction of evidence that has been properly authenticated and not disputed; and they assert Defendants have relied on "self-serving testimony" when this evidence was adduced at depositions that Plaintiffs themselves took.

None of this changes the fact that Plaintiffs cannot establish critical elements of their claims.  For purposes of this Reply, Defendants focus on just a few of these elements, recognizing that Plaintiffs' failure to satisfy any one is sufficient to grant summary judgment in favor of Defendants.  The allegedly defamatory comments, viewed in the context in which they were made, are non-actionable opinions—hyperbolic insults and name calling that no reasonable person would understand to be statements of fact.  Independently, Plaintiffs have not shown clear and convincing evidence of actual malice.  Indeed, they appear to misunderstand the very concept.  Plaintiffs' fraud claims, while a moving target, fail for many independent reasons, including that they are comprised of non-actionable opinions, are not based on statements on which Plaintiffs could have reasonably relied, and because Plaintiffs have no evidence of intent to defraud.  Accordingly, Defendants are entitled to summary judgment on these claims.

## II. THE ALLEGEDLY DEFAMATORY COMMENTS ARE NOT ACTIONABLE

Plaintiffs' analysis of whether the allegedly defamatory comments are statements of fact or of opinion is **backwards**. Without quoting any of the language from any of the comments, Plaintiffs simply assume that each contains one or more factual assertions. Plaintiffs then opine on whether the overall context or content of any of those comments might "change the plain reading of Defendants' statements which imply that they are factually based." Dkt. 140, p. 20. This is precisely the approach that the court in *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1281 (N.Y. 1991) rejected, holding that the analysis of whether an allegedly defamatory statement is fact or opinion must **begin** with the "**whole communication, its tone and apparent purpose.**" (Emphasis added.) In other words, the "statements must first be viewed in their context in order for courts to determine whether a reasonable person would view them as expressing or implying *any* facts." *Id*. (emphasis in original). As the Court in *Immuno AG.* recognized, "[t]he difference is more than theoretical." *Id*. Statements that might be considered factual and defamatory in nature when viewed in isolation are frequently held to be statements of opinion when viewed in their larger context. Indeed, that was exactly the case in *Immuno AG.*, where the Court held that, because the allegedly defamatory statements were made in the context of a letter to the editor, a reasonable reader would have understood those statements to be the personal opinions of the author, not statements of fact. *Id*. The same is true here.

### A. The Entirety of the Allegedly Defamatory Comments Demonstrates that None of them Contains an Actionable Statement of Fact

Plaintiffs persist in paraphrasing portions of the allegedly defamatory comments to assert they contain defamatory statements of fact. But, rather than merely "isolating and identifying assertions of fact," the Court must examine the entirety of the communications to determine whether **any** statements contained therein can be understood as assertions of fact. *Brian v.*

-2-

*Richardson,* 660 N.E.2d 1126, 1130 (N.Y. 1995); *Immuno AG.*, 567 N.E.2d at 1281.

For example, Plaintiffs repeatedly claim that Defendants called Rapaport "a domestic abuser." Dkt. 140, p. 12. This assertion is based on a single comment near the end of the "diss track" video. P-COMF (Dkt. 141) ¶ 53(eee). The diss track is a collection of hyperbolic insults directed at Rapaport, such as calling him a "10-gallon drum of curdled milk," a "walking blob of jizz," and a "snake oil salesman," and stating that he looks like "Larry Bird's mom's sister," a "puddle of pudding," and more. Dkt. 130-110 (Exh. 192). The phrase about which Plaintiffs complain follows such absurdist commentary: "You look like a chemo version of Yertle the Turtle / Shooting blanks on Twitter like Portnoy the infertile / You're all bark, no bite, a fraud and a hack / The only place you're tough is behind people's backs / And if you wanna go in real life just come at me and flex / I'll end up making you look as black and blue as your ex." *Id*. No reasonable viewer would understand any of this video, let alone the "black and blue" line, as an assertion of fact when it comes after nearly six minutes of absurd and hyperbolic insults.[1]

Plaintiffs also complain about a post written by Defendant Eric Nathan referring to Rapaport as a "D List Actor With A Slight STD Problem." Dkt. 141 ¶ 53(nn). But the post is manifestly a parody of an article about Rapaport stopping a plane passenger from opening the exit door while in flight. Dkt. 130-70 (Exh. 152). After linking to the TMZ article, Nathan's entire blog jokingly theorizes that the passengers were trying to jump out of the plane in mid-air to avoid being near Rapaport. *Id*. No one would understand anything in this post to be factual.

As a final example, Plaintiffs complain about the series of articles titled "Michael

---

[1] Just like a reasonable viewer would understand the lyrics "[y]ou look like a chemo version of Yertle the Turtle" to be making fun of Rapaport's appearance (and not a factual assertion that he has cancer), a reasonable viewer would likewise understand the herpes-related comments to be making fun of Rapaport's appearance. Indeed, Barstool made fun of its own founder, David Portnoy, in the diss track, joking that he was impotent ("[s]hooting blanks on Twitter like Portnoy the infertile").

Rapaport is Fraudulent Sack of Shit" written by Defendant Smith. Dkt. 141 ¶¶ 53(b), (l), (x). Smith begins that series of articles by referring to his dispute with Rapaport as a "middle-school drama" and states that "my entire existence is based on being wrong about everything." Dkt. 130-23 (Exh. 105).  These statements are clear signals to any reasonable reader that nothing in those articles should be taken seriously—they are made for humorous effect.

### B. The Broader Context of the Allegedly Defamatory Comments Also Demonstrates They Are Not Statements of Fact

Plaintiffs concede the following key facts: the allegedly defamatory comments were made on social media and Barstool platforms (Dkt. 141 ¶ 52); Barstool is a "comedy brand" that "comments on public personalities" (Dkt. 141 ¶ 23); Rapaport is a public figure known for sharing his "strong, funny and offensive points of view on life, sports, music, film & everything in between" (Dkt. 141 ¶¶ 1, 2); and Rapaport posted tweets personally attacking Defendants (Dkt. 141 ¶¶ 42, 48).  These facts demonstrate that the allegedly defamatory comments were made as part of a trash-talking feud between a comedy brand and a public figure known for his humorous and sometimes offensive personality.  Although Rapaport asserts that Defendants' comments were too personal and mean (*see, e.g.*, Dkt. 141 ¶¶ 384, 385), Rapaport is not entitled to act as the arbiter of what constitutes proper trash talking.  There is no dispute that the allegedly defamatory comments are riddled with over-the-top insults, profanity and nonsensical language. *See e.g.*, Dkt. 141 ¶¶ 53(b) (calling Rapaport a "Fraudulent Sack of Shit"), 53(d) (calling Rapaport "Fradraport" and a "fucking chump fraud"), 53(p) (referring to Rapaport as an "old crusty herpe"), 53(r) (referring to Rapaport as a "pasty sickly race baiting fraud hack!"). Indeed, many of the insults related to Rapaport's appearance, and the photo with the sore on his lip—which Rapaport admits looks like herpes—was a particular target of those insults.  No reasonable reader would take these comments literally or believe they were statements of fact.

Plaintiffs also incorrectly assert that opinions may only be protected if they are accompanied by a recitation of the facts on which they are based. Dkt 140, p. 13.  But opinions receive absolute protection if they do not imply any factual basis, such as when they include rhetorical hyperbole or loose, figurative language. *Steinhilber v. Alphonse*, 501 N.E.2d 550, 552 (N.Y. 1986).  Plaintiffs fail to even acknowledge this basic principle of law.

Plaintiffs assert based on self-serving, attorney-drafted declarations that the public understood the allegedly defamatory statements to be factual. Dkt. 140, p. 14.  However, the only document Plaintiffs cite in support of this assertion, the "Chartable report," demonstrates that—as Plaintiffs concede—people were merely "repeating" Defendants' trash talking in reviews of Plaintiffs' podcast. *See* Dkt. 141 ¶¶ 361, 363.  Nothing in the report suggests that any of those reviewers believed those insults to be statements of fact.  The fact that certain reviewers repeated these epithets does not suddenly convert them from opinions to statements of fact.

Plaintiffs misleadingly cite *Mullenmeister v. Snap-On Tools Corp.*, 587 F.Supp. 868, 873 (S.D.N.Y. 1984) for the proposition that, even if Defendants engaged in trash talk, that is no defense to a defamation claim.  Far from standing for this proposition, the *Mullenmeister* court **dismissed** the plaintiff's claim that defendant defamed him by depicting him as a cartoon wearing a helmet bearing a swastika precisely because, while the image "no doubt [had] disparaging connotations," "nasty epithets, however vitriolic, are not libelous," and the "context makes clear that the swastika denoted no substantive assessment of [plaintiff's] character or political affiliation." *Id*. at 869, 874.  The same is true here.  Even if the allegedly defamatory comments were vitriolic, that does not make them defamatory and, further, the context makes clear that any reasonable person would understand them as mere insults and hyperbolic rhetoric.

Plaintiffs argue that it is irrelevant that the allegedly defamatory comments were made

-5-

online because the comments were not made by anonymous or pseudonymous posters. Dkt. 140, pp. 20-21.  But the case law is clear that statements made on blogs and social media, are likely to be understood to be statements of opinion, regardless of whether they are made anonymously. *See, e.g., Stolatis v. Hernandez*, 77 N.Y.S.3d 473, 476-77 (App. Div. 2018) (context of allegedly defamatory comments posted on Facebook demonstrated they were opinion); *Couloute v. Ryncarz*, 2012 WL 541089, at *5-6 (S.D.N.Y. Feb. 17, 2012) ("hyperbolic opinions" appearing online could not be reasonably understood as statements of fact).  This is particularly true where, as here, the forum in which the comments appear is recognized as containing hyperbolic, highly charged discourse. *See e.g., Hobbs v. Imus*, 698 N.Y.S.2d 25, 37 (App. Div. 1999) (dismissing defamation claim based on "[g]ratuitously tasteless and disparaging" comments made on Don Imus' "shock talk" radio show because reasonable listeners would not have understood them to be factual); *Hayashi v. Ozawa*, 2019 WL 1409389, at *5 (S.D.N.Y Mar. 28, 2019) (finding allegedly defamatory comments to be opinions because they appeared on defendant's blog which had a "hyperbolic and rhetorical tone").  Given that Barstool and Rapaport (like "shock jock" Don Imus) are both known for hyperbole and over-the-top rhetoric, the context in which the allegedly defamatory comments appear clearly indicates they are statements of opinion, not fact.

### C.     **Plaintiffs Have Failed to Even Try to Establish Actual Malice**

Plaintiffs do not dispute that Rapaport is a public figure or that they must prove actual malice in order to prevail on their defamation claim.  Yet Plaintiffs devote only a single page to discussing actual malice, and this discussion completely ignores the cases Defendants cited in their Motion. Dkt. 140, p. 22.  Plaintiffs simply repeat their argument that Defendants' purported motives in trying to "humiliate" and "haunt" Rapaport establish actual malice.  But evidence of malicious intent is ***not*** evidence of actual malice. *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000).  Rather, Plaintiffs must prove by clear and convincing evidence that

Defendants subjectively intended to make a statement of fact while knowing or having reason to believe it was false. *Id.*; *Church of Scientology Int'l. v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001).

Plaintiffs assert that Defendants "never conducted research" to determine whether their comments were true and "had no basis for believing the truth" of their comments about Rapaport. Dkt. 140, p. 22.  But that is because none of the Defendants intended to convey statements of fact about Rapaport. D-SOMF (Dkt. 121) ¶¶ 61-63.  Rather, they were simply engaged in a trash-talking feud.  Plaintiffs fail to address the cases Defendants cited establishing that, where a defendant does not intend to convey a statement of fact, the plaintiff cannot establish actual malice. *See* Dkt 134, pp. 17-18.  Plaintiffs offer no evidence that any of the Defendants intended to convey a statement of fact about Rapaport in any of the allegedly defamatory comments.  Rather, even the testimony cited by Plaintiffs establishes that the Defendants all believed their comments about Rapaport were part of a trash talking feud and were never intended to be factual. *See, e.g.,* P-SOMF (Dkt. 105) ¶ 297.

Plaintiffs also fail to acknowledge that they must prove actual malice by **clear and convincing evidence**. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  This means that Plaintiffs must demonstrate actual malice by "something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).  Plaintiffs must show that it is "highly probable" Defendants acted with actual malice. *Colorado v. New Mexico*, 467 U.S. 310, 317 (1984).  Because Plaintiffs have presented no evidence showing that Defendants intended to make factual statements about Rapaport or that Defendants subjectively believed their comments were factual and false, Plaintiffs have failed to show it is "highly probable" that Defendants acted with actual malice.

### III. <u>PLAINTIFFS' FRAUD CLAIMS ARE NOT ACTIONABLE</u>

Plaintiffs' fraudulent inducement and concealment claims (which they added almost a

-7-

year into this litigation after retaining new counsel) are a moving target. In their FAC and Motion, Plaintiffs treated their claims that Barstool committed fraud (Counts IX, X) and breached the Talent Agreement by failing to engage in good faith efforts to secure them a weekly show (Count II) as one and the same. FAC (Dkt. 60), ¶¶ 4, 64, 127-43; Mtn. (Dkt. 104), pp. 9-12. Indeed, in their Rule 56.1 Statement, Plaintiffs used a single heading for these claims and made clear that they arose from the same facts. Dkt. 105, pp. 20-29. Now, to avoid the legal effect of their overlapping breach of contract claim, Plaintiffs have created a brand-new fraud argument— and faulted Barstool for not responding to it. While confusing, it appears that Plaintiffs now assert that, notwithstanding Barstool's intention and good faith efforts to provide Rapaport with a weekly show, Barstool misrepresented its "ability" to actually do so. Dkt. 140 pp. 23-24. This argument is pure sophistry, and the Court should grant summary judgment for Defendants.

### A. Plaintiffs' Did Not Allege Their Newfound Claims in their FAC

A party cannot avoid summary judgment by raising new claims. *See Dominick & Dominick LLC v. Deutsche Oel & Gas AG*, 2017 WL 3669619, at *5 (S.D.N.Y. Aug. 24, 2017) (refusing to consider new claims raised in opposition to summary judgment) (collecting cases); *Massie v. Ikon Office Sols., Inc.*, 381 F.Supp.2d 91, 95 (N.D.N.Y. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.") (quoting Wright & Miller, Fed. Practice & Procedure § 2723). Allowing such previously unalleged claims would violate Barstool's due process rights and is reason alone to deny them. If Plaintiffs are not asserting new fraud claims, then their breach of contract claim (Count II) would still overlap with and bar their fraud claims. Dkt. 134, p. 20.

### B. Plaintiffs Cannot Establish the Elements of Fraud

Although Plaintiffs try to assert otherwise (Dkt. 140, p. 25), they bear the burden of showing the elements of fraud by clear and convincing evidence. *Leucadia, Inc. v. Reliance Ins.*

*Co.*, 864 F.2d 964, 971 (2d Cir. 1988).  Plaintiffs do not come close to meeting this standard.

<u>The Asserted Misrepresentations Concern Non-Actionable Opinions</u>: Plaintiffs generically assert that, before the Talent Agreement was executed, Barstool misrepresented and concealed information about its ability to obtain a weekly show for them on Sirius. Dkt. 140, p. 24.  Although it is impossible to tell from their Opposition, it appears from Plaintiffs' Counterstatement that these purported representations and omissions fall into two categories.  Dkt. 141, pp. 98-104.  The first relates to the timeframe by which Barstool would obtain a Sirius channel.  For example, Plaintiffs reference March 2017 emails in which Barstool told Rapaport that Barstool "should" have a Sirius channel "in a matter of weeks" and that her "goal" was to be "locked and loaded within 3-4 weeks." Dkt. 141, p. 101.  The second relates to Sirius' ability to fund Plaintiffs' show.  For example, Plaintiffs reference March and April 2017 emails in which Sirius said it would fund Plaintiffs' show "[d]epending on the number" and subject to extending its relationship with Barstool (which it did). Dkt. 141, pp. 100, 102, 118 (¶ 144).[2]

On their face, these and other emails Plaintiffs reference do not contain representations or omissions of "presently existing, objective facts" but instead "express expectations about the future," and are thus "statements of opinion." *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018).  Indeed, Plaintiffs' entire theory appears to be that Barstool made representations about its ability to secure Plaintiffs a show on a third party's radio network.  This means Barstool was merely representing its hopes about its ability to secure an agreement with Sirius—Barstool did not control the outcome.  And Plaintiffs concede that Barstool was only having preliminary discussions with Sirius at the time of these alleged representations (Dkt. 140, p. 25 n.42), thereby underscoring that Barstool was simply discussing its expectations about

---

[2] Plaintiffs suggest there were misrepresentations about the Term Sheet language (Dkt. 141, pp. 99, 103(I), (J)), but it would not be reasonable to rely on a document superseded by the Talent Agreement. Dkt. 121 ¶¶ 30, 32, 33, 34(j).

the future.  None of the referenced emails show that Barstool knew at this time that it would be unable to secure Plaintiffs a show—negotiations continued for months. Dkt. 121 ¶¶ 64, 65.

<u>Plaintiffs' Reliance Was Not Reasonable</u>: Plaintiffs do not dispute that: (1) they were represented by counsel and have experience negotiating and executing contracts; and (2) the Talent Agreement was heavily negotiated and has an integration clause. Dkt. 141 ¶¶ 34(j), 35, 36.  Even though Plaintiffs assert that Barstool misrepresented and concealed information relating to its ability to secure them a weekly show *before the execution of the Talent Agreement*, they then executed the Talent Agreement, which itself made clear that Barstool had not yet secured them a weekly show and that, if Barstool secured them a weekly show, it might not even be on Sirius. Dkt. 121 ¶ 34(h).[3]  If Plaintiffs were only entering the contract on the condition that Barstool guarantee them a weekly show on Sirius, they should have included such language. Plaintiffs' purported reliance on asserted representations and omissions that predated the Talent Agreement (and were contradicted and superseded by its terms) was not reasonable.

<u>Barstool Did Not Intend to Defraud Plaintiffs</u>: Rather than address the ample evidence showing that Barstool tried to secure them a Sirius show (Dkt. 121 ¶¶ 66-69), Plaintiffs ask the Court to put on blinders, asserting that such evidence is irrelevant. Dkt. 140, p. 25.  But Plaintiffs do not dispute the cases Barstool cited showing that such evidence undermines any claim that it acted with fraudulent intent. Dkt. 134, p. 26.  If, as Plaintiffs now contend, Barstool knew it would be unable to secure them a show before the Talent Agreement was executed, then it would have made no sense for Barstool to thereafter identify Rapaport as a daily host in internal emails and draft contracts with Sirius, much less to push Sirius to fund the show. Dkt. 121 ¶¶ 66-69.

---

[3] Plaintiffs assert that Barstool misrepresented to them in March 2017 that its deal with Sirius "should" be done in a "matter of weeks" yet, *two months later*, they executed the Talent Agreement even though the contract states only that Barstool would engage in good faith efforts to secure them the opportunity for a show on a platform agreed to by the parties ("e.g., a Sirius radio show, a terrestrial radio show, a podcast, a video series"). Dkt. 141 ¶¶ 34(h), 70.

Dated: May 26, 2020                    Respectfully submitted,

                                            GREENBERG GLUSKER FIELDS CLAMAN &
                                            MACHTINGER LLP

By: _____
      Aaron J. Moss (AMoss@ggfirm.com)
      Ricardo P. Cestero (RCestero@ggfirm.com)
      Steven A. Stein (SStein@ggfirm.com)
      2049 Century Park East, 26th Floor
      Los Angeles, CA 90067-3101
      (310) 553-3610 Telephone
      (310) 553-0687 Facsimile

      HERRICK FEINSTEIN, LLP
      Barry Werbin (BWerbin@Herrick.com)
      Elena McDermott (EMcdermott@Herrick.com)
      2 Park Avenue
      New York, NY 10016
      (212) 592-1400 Telephone
      (212) 592-1500 Facsimile

      Attorneys for Defendants