UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
**MICHAEL RAPAPORT and MICHAEL DAVID PRODUCTIONS, INC.,**
Plaintiffs,
-against-
**BARSTOOL SPORTS, INC., ADAM SMITH, KEVIN CLANCY, ERIC NATHAN and DAVID PORTNOY,**
Defendants.

:
:
:
:
:
:
:
:
:
:
:

**Case No. 1:18-CV-08783**

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOTITION TO MOTION FOR RECONSIDERATION OF MARCH 29, 2021 MEMORANDUM AND ORDER, OR, IN THE ALTERNATIVE, FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

---------------------------------------- X
---------------------------------------- X
**BARSTOOL SPORTS, INC.,**
Counterclaimant,
-against-
**MICHAEL RAPAPORT and MICHAEL DAVID PRODUCTIONS, INC.,**
Cross-Defendants.

:
:
:
:
:
:
:
:
:

---------------------------------------- X

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ....................................................................................1

II. BARSTOOL'S COUNTERCLAIM ...............................................................................1

III. COUNTS IX-X OF PLAINTIFFS' FAC: FRAUDULENT CONCEALMENT AND INDUCEMENT .....................................................................................................2

    A. Barstool's Misrepresentations Were Extraneous to the Contract ................3

    B. Plaintiffs Established a Legal Duty Separate from Barstool's Duty to Perform Under the Contract ..........................................................................4

        1. Barstool's Misleading Partial Disclosures .......................................4

        2. Barstool's Superior Knowledge and Duty to Disclose ....................6

    C. Plaintiffs Identified Special Damages ...........................................................8

IV. COUNT VIII OF PLAINTIFFS' FAC: BREACH OF CONTRACT .....................8

V. COUNTS XI OF PLAINTIFFS' FAC: DEFAMATION .......................................9

VI. CONCLUSION...............................................................................................10

# **TABLE OF AUTHORITIES**

Cases

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,

    404 F.3d 566 (2d Cir. 2005) ................................................................................. 4

*Cochran v. Channing Corp.*,

    211 F. Supp. 239 (S.D.N.Y. 1962) ........................................................................ 5

*Eisemann v. Greene*,

    204 F.3d 393 (2d Cir. 2000) ................................................................................. 3

*Gorman v. Fowkes*,

    949 N.Y.S.2d 96 (App. Div. 2nd Dept. 2012) ...................................................... 3

*In re Aratana Therapeutics Inc. Sec. Litig.*,

    315 F. Supp. 3d 737 (S.D.N.Y. 2018) .................................................................. 7

*KCG Americas LLC v. Brazilmed, LLC*,

    No. 15 CIV. 4600(AT), 2016 U.S. Dist. LEXIS 30497, 2016 WL 900396 (S.D.N.Y. Feb. 26, 2016) ................................................................................................................ 3

*Meeker v. McLaughlin*,

    No. 17-CV-5673 (SN), 2019 U.S. Dist. LEXIS 55086 (S.D.N.Y. Mar. 31, 2019) ........... 6

*Obourn v. Am. Well Corp.*,

    No. 3:15-CV-48 (JCH), 2015 U.S. Dist. LEXIS 138972 (D. Conn. Oct. 13, 2015) ......... 2

*Schwarz v. ThinkStrategy Capital Mgmt. LLC*,

    2012 U.S. Dist. LEXIS 79453 (S.D.N.Y. May 31, 2012) ............................................. 5

*Sw. Payroll Serv. v. Pioneer Bancorp*,

    No. 1:19-CV-1349 (FJS/CFH), 2020 U.S. Dist. LEXIS 137202 (N.D.N.Y. July 7, 2020) 6

I.  **PRELIMINARY STATEMENT**

Plaintiffs Michael Rapaport ("Mr. Rapaport") and Michael David Productions, Inc. (collectively "Plaintiffs") file this memorandum ("P.R. Reply") in further support of their Motion for Reconsideration (ECF No. 155) ("P.R. Motion")[1] and in response to Defendants' incomplete and completely disingenuous opposition (ECF No. 158) ("D.R. Opposition") to the P.R. Motion.

Plaintiffs' memorandum in support of P.R. Motion ("P.R. Memorandum") provides a clear and concise description of each of the errors requiring reconsideration. However, as with their opposition to P's Motion (ECF No. 140) ("D's Opposition"), Defendants have 1) failed to respond to each of Plaintiffs' arguments and citations to cases and evidence, and 2) attempted to cover up this failure with misrepresentations of the record and Plaintiffs' arguments. Defendants have flagrantly misquoted the record and Plaintiffs' arguments (including responding to arguments that weren't made while ignoring those that were). Given the page limitations afforded to Plaintiffs, it is regrettable that Defendants have forced Plaintiffs to expend much of this Reply responding to their misrepresentations, which they made in an attempt to muddy the record and convince this Court to "punt" on addressing clear errors contained in the Order. Should Defendants' dishonest tactics win out, the judicial process would be wholly undermined.

II.  **BARSTOOL'S COUNTERCLAIM**

At the heart of Barstool's Counterclaim is an internal document ("Revenue Document") prepared by Barstool that shows that the Rant and Podcast revenue collected by Barstool that was

---

[1] Plaintiffs' Motion seek a reconsideration of this Court's March 29, 2021 Order (ECF. No. 151) ("Order"), which ruled upon both Plaintiffs' Motion for Summary Judgment (ECF No. 103) ("P's Motion") against Defendants Barstool Sports, Inc. ("Barstool"), David Portnoy ("Mr. Portnoy"), Adam Smith ("Mr. Smith"), Kevin Clancy ("Mr. Clancy"), and Eric Nathan ("Mr. Nathan") (collectively "Defendants") and Defendants' Motion for Partial Summary Judgment (ECF No. 119) ("D's Motion"). Plaintiffs provided evidence in support P's Motion and in opposition to D's Motion in Plaintiffs' Rule 56.1 Statement (ECF No. 105) ("SOMF") and in Plaintiffs' Counterstatement (ECF No. 141) ("P-CS") to Defendant's Rule 56.1 Statement (ECF No. 121) ("D-SOMF").

attributable to Mr. Rapaport (his 60% of total revenue) as of February 5, 2018 was at least $417,646, with only $182,354 remaining in possible recoupment to Barstool. (SOMF ¶52). P.R. Memorandum extensively lays out why Barstool's asserted position that $417,646 represents the total gross revenue of the Rants and Podcast is illogical and directly refuted by the document. (ECF No. 156 at 2-7). Yet, Defendants' response makes two egregious misrepresentations to the Court.

First, Defendants misquote the document as saying, "Lifetime Gross Revenue" as opposed to "Lifetime Gross Revenue **Earned**" (emphasis added). Defendants further misrepresent that "the parties do not dispute the total revenue generated by Rapaport's podcasts ($417,646), but instead whether Barstool's right of recoupment applies to this amount, thereby requiring Rapaport to refund a portion of the Minimum Guarantees that he received to Barstool." (ECF No. 158 at 3). However, Plaintiffs have never said that $417,646 represents total revenue and there is no dispute as to Barstool's right of recoupment with respect to the arguments currently before the Court. As Plaintiffs note, $417,646 represents "Mr. Rapaport's sixty-percent share ($417, 646) of total Rant and Podcast Revenue ($696, 077)." (ECF No. 156 at 8).

Defendants are clearly trying to confuse the Court. A review of Barstool's own document, however, shows conclusively that Mr. Rapaport's proffered interpretation *must* be correct.[2]

### III. COUNTS IX-X OF PLAINTIFFS' FAC: FRAUDULENT CONCEALMENT AND INDUCEMENT

As the Court noted in its Order, "[t]o show that his fraud claim does not duplicate his breach of contract claim, Mr. Rapaport must (1) establish a legal duty separate from Barstool's duty to perform under the contract, (2) demonstrate a fraudulent misrepresentation extraneous to the

---

[2] Defendants also argue that disagreement with the Courts' interpretation of the Revenue Document is not a valid ground for reconsideration. However, a motion for reconsideration is appropriate when a Court is found to have misread the evidence presented to it. *See e.g. Obourn v. Am. Well Corp.*, No. 3:15-CV-48 (JCH), 2015 U.S. Dist. LEXIS 138972, at *2-3 (D. Conn. Oct. 13, 2015) (Granted motion for reconsideration arising from Court's misinterpreting of evidence presented).

2

contract, or (3) identify special damages [that are caused by the misrepresentation and unrecoverable as contract damages]." (ECF. No. 151 at 26).

### A. Barstool's Misrepresentations Were Extraneous to the Contract

In ruling against Plaintiffs' fraud claims, this court erroneously concluded that "Rapaport's fraud claims about Barstool's ability and obligation to secure him an opportunity for a weekday show impermissibly duplicate his breach of contract claim premised on the 'good faith efforts' provision of the Talent Agreement." In support of this statement, this Court cites to *Gorman v. Fowkes*, 949 N.Y.S.2d 96, 97-98 (App. Div. 2nd Dept. 2012) for the position that fraud claims arising from misrepresentations relating to a party's intent or ability to perform under the contract are duplicative of related breach of contract claims. However, as noted by P.R. Memorandum (ECF No. 156 at 8-10), the overwhelming authority in this Circuit, including this District, has found that fraud claims arising from misrepresentations about a party's ability to perform under a contract **are not duplicative** of breach of contract claims. *See e.g. KCG Americas LLC v. Brazilmed, LLC*, No. 15 CIV. 4600(AT), 2016 U.S. Dist. LEXIS 30497, 2016 WL 900396, at *4 (S.D.N.Y. Feb. 26, 2016) ("Representations about an entity's ability to perform under a contract are distinct from representations that the entity will perform.").

It does not go without notice that Defendants have chosen to avoid providing any law in opposition to Plaintiffs' cited cases. Rather, Defendants have attempted to hide behind a false shield, arguing that none of Plaintiffs' cases should be considered as they were not cited in prior briefings. Defendants support this position by providing a deceptive quotation to *Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000), claiming that reconsideration is only appropriate where a court overlooks "controlling decisions . . . that were put before it on the underlying motion." However, the full quote, which Defendants omitted for obvious reasons is that "[t]o be

3

entitled to reargument, a party 'must demonstrate that the Court overlooked controlling decisions **or factual matters that were put before it on the underlying motion**.'" There is no requirement that controlling decisions (only factual matters) have been previously put before the Court.

For all of Defendants' rhetoric about how it would be unfair to subject a disclosing party to a "crystal ball" test, they have attempted to do that very thing here. At no point across Defendants' prior filings have they ever made an argument or cited a case suggesting that misrepresentations related to a party's ability to perform under a contract were duplicative of underlying breach of contract claims. This argument was presented entirely *sua sponte* by this Court, and as noted above, is in complete opposite to the weight of legal authority in this Circuit. There is no way that Plaintiffs could have anticipated the Court considering this point it its Order, much less committing clear error on this point, and to subject Plaintiffs to such a "crystal ball" standard would amount to an abuse of discretion.

### B. Plaintiffs Established a Legal Duty Separate from Barstool's Duty to Perform Under the Contract

Under New York law, a party may have a duty to disclose when (1) it is in a fiduciary role, (2) it made a misleading partial disclosure, **or** (3) it has superior knowledge that is not readily available to the counterparty and knows that the counterparty is acting on mistaken knowledge. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005) (emphasis added) (citations omitted). The Order erroneously concludes that "Rapaport offers no argument in support of the first two scenarios." (ECF. No. 151 at 26 fn. 6).

#### 1. Barstool's Misleading Partial Disclosures

The P.R. Memorandum provides extensive citation to misleading partial disclosures previously identified by Plaintiffs already in the record. (ECF. No. 156 at 11-13). For example, among such partial disclosures, Plaintiffs identify Barstool's assertions that Mr. Rapaport would

4

be provided a Weekly Show in "a matter of weeks at most," (SOMF ¶124)[3], which was made despite Barstool already knowing, at the time of the disclosure that: (1) Barstool would not provide Mr. Rapaport a Weekly Show unless Sirius covered all costs (SOMF ¶113); (2) Sirius wouldn't invest in Mr. Rapaport without an extension to its pre-existing contract with Barstool as it did not want to invest in a show that may be gone in six months (SOMF ¶119); (3) Barstool did not intend to extend its prior contract with Sirius and preferred to negotiate a new contract for its own radio channel (SOMF ¶118); (4) even if Sirius did invest in a show for Mr. Rapaport, it would not cover the full cost of the show (SOMF ¶136); and (5) a Sirius radio channel would not occur until after Memorial Day at the earliest. (SOMF ¶119).

A party is liable for fraud "where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth." *Schwarz v. ThinkStrategy Capital Mgmt*. LLC, 2012 U.S. Dist. LEXIS 79453, at *46 (S.D.N.Y. May 31, 2012). *See also Cochran v. Channing Corp*., 211 F. Supp. 239, 243 (S.D.N.Y. 1962) ("Fraud may be accomplished by false statements, a failure to correct a misleading impression left by statements already made or, as in the instant case, by not stating anything at all when there is a duty to come forward and speak."). Here, Barstool clearly made such representations regarding the status of its negotiations with Sirius and its ability to provide Mr. Rapaport with a Weekly Show. Nonetheless, Defendants have provided no counter to liability stemming from these partial disclosures. Rather, Defendants have attempted to distort the Court's analysis of the special facts doctrine into a nonsensical argument that no partial disclosures were

---

[3] Note, although the memorandum filed by Plaintiffs in support of P's Motion continued a typographical error by referencing SOMF ¶134 (which cited a declaration by Mr. Rapaport), as opposed to SOMF ¶124 (which cited the referenced email by Barstool), this typographical error was remedied in Plaintiffs' Opposition and Reply (to which Defendants were afforded an opportunity to respond).

5

made. The special facts doctrine is a completely separate test from the partial disclosure test, and as Defendants have chosen not to address this existence of partial disclosure (in a dishonest attempt to confuse the Court), this Court should find in Plaintiffs' favor on this issue.

### 2. Barstool's Superior Knowledge and Duty to Disclose

"The special facts doctrine holds that, 'absent a fiduciary relationship between the parties, there is nonetheless a duty to disclose when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair.' To establish liability under this doctrine, the plaintiff must allege that the material was 'particularly' within the knowledge of one party, and that the information is such that it could not have been discovered by the other party through the exercise of ordinary intelligence." *Meeker v. McLaughlin*, No. 17-CV-5673 (SN), 2019 U.S. Dist. LEXIS 55086, at *4-5 (S.D.N.Y. Mar. 31, 2019) (citations omitted).

In ruling on P's Motion, this Court improperly applied a "granular detail" test, noting that "the record shows that Rapaport knew about the tentative nature of the Barstool-Sirius negotiations when entering the Talent Agreement; the record does not support a finding that Barstool had to disclose to Rapaport more granular details of its negotiations." (ECF. No. 151 at 26, fn 6). However, ignoring the clear error of the Court concluding that information indicating that a contract would almost certainly never be performed constitutes only "granular detail," the bigger issue is that **the granularity of details is not the standard for the special facts doctrine**. Rather, the Second Circuit has routinely held that the special facts doctrine applies whenever "one party has superior knowledge that is not readily available/accessible to the other party and that party knows the other party is acting on the basis of mistaken knowledge." *Sw. Payroll Serv. v. Pioneer Bancorp*, No. 1:19-CV-1349 (FJS/CFH), 2020 U.S. Dist. LEXIS 137202, at *10 (N.D.N.Y. July 7, 2020) (citation omitted). In such a scenario, the party with superior knowledge must furnish information sufficient to rectify the mistaken knowledge to the extent that such information could

not have been discovered by the plaintiff through the exercise of ordinary intelligence. *Id*.

Regardless of whether this Court considers certain information to be "granular," the fact is that Barstool never corrected Plaintiffs' mistaken knowledge regarding the (un)likelihood of Barstool entering into a deal with Sirius and being able to provide a Weekly Show. Plaintiffs' only basis for the knowledge of the likelihood of a deal with Sirius was Barstool who had repeatedly made material misrepresentations during the course of negotiations of the Talent Agreement. This alone shows Barstool's failure to comply with the special facts doctrine, which is a results-driven test (i.e. did the defendant provide information that is in its control and unavailable to the plaintiff that was necessary to rectify plaintiff's mistaken knowledge). No other analysis is relevant.

Defendants fail to provide any logical response to the above analysis, instead citing to evidentiary support that exhibits Defendants' clear misunderstanding of the delineation between fraud claims (which focus on actions prior to the execution of a contract) and breach of contract claims (which focus on actions after the execution of a contract).[4]

Defendants' only other response is that representations "express expectations about the future," as opposed to "presently existing, objective facts," are "statements of opinion" and not actionable." (ECF No. 158 at 10 fn.7) (citing *In re Aratana Therapeutics Inc. Sec. Litig*., 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018)). However, as *Aranta* continues, such statements are only "inactionable so long as the speaker actually held the belief professed, did not supply an untrue supporting fact, and did not omit information rendering the statement misleading." *Id*. As noted above, and in Plaintiffs' prior filings, Barstool communicated, and Mr. Rapaport was of the

---

[4] Specifically, Barstool alleges that it disclosed the state of its negotiations with Sirius through various emails circulated in November 2017 and January 2018. Such citations are puzzling as the Talent Agreement was entered into on June 16, 2017 ("SOMF ¶34) and such communications logically would have no impact on Mr. Rapaport entering into the Talent Agreement.

7

understanding, that a deal with Sirius was near certain, and Barstool made these representations despite knowing that such a deal was virtually impossible. As such, the special facts doctrine subjects Barstool to liability for its fraudulent misrepresentations and omissions.

### C. Plaintiffs Identified Special Damages

As the Order notes, Mr. Rapaport's fraud claims are not duplicative of his breach of contract claims if he can identify special damages that are caused by the misrepresentation and unrecoverable as contract damages. Despite Plaintiffs providing pages of financial analysis evidencing special damages, including a specific dollar figure and a specific contract from which such damages accrued, the Order wholly overlooked Plaintiffs' presentation of special damages. *See e.g.* P-CS ¶161, which evidences that Mr. Rapaport would have made at least $120,000 more by accepting an offer from CBS as opposed to Barstool.

Defendants now move this Court to ignore this evidence by falsely arguing that "Rapaport did not argue in his prior briefing that his fraud claims give rise to 'special damages,'" and that Plaintiffs are therefore barred from making such arguments now. (ECF No. 158 at 12). This is false. Plaintiffs specifically argued that the damages sought and recoverable under their fraud claims are distinct from Plaintiffs' breach of contract claims. *See* ECF No. 142 at 24 and fn.40.[5]

Given Plaintiffs' uncontroverted evidence of special damages, there is no basis for concluding that such a presentation of damages is insufficient. As such, at the very least, Plaintiffs' fraud claims should be found to be non-duplicative of their fraud claims.

### IV.   COUNT VIII OF PLAINTIFFS' FAC: BREACH OF CONTRACT

---

[5] Defendants also attempt to dispute Plaintiffs' factual conclusions that the CBS offer was superior to the Talent Agreement. Plaintiffs need not even address Defendants' illogical factual conclusions as such determinations are for the jury, and not this Court, to decide. It is also incredibly hypocritical to suggest that there is no genuine dispute of fact on this issue while simultaneously arguing that there is a legitimate dispute (which there isn't) of how to interpret the Revenue Document.

No part of D.R. Opposition affects the arguments raised in P.R. Memorandum. Despite Plaintiffs specifically excluding "Barstool's failure to promote Mr. Rapaport's Rant videos and its blocking of Mr. Rapaport's involvement with business partners" from the scope of P.R. Motion, focusing instead on Barstool's disparagement of Mr. Rapaport and his brand prior to his departure from Barstool, D.R. Opposition focuses exclusively on efforts made by Barstool to promote the rant videos. As such, as it did in their opposition to P's Motion, Barstool continues to avoid the impossible of trying to explain how its direct attacks against Mr. Rapaport's brand **prior** to his termination (facts which are undisputed), do not breach the Talent Agreement.[6] Given this failure to respond, the Court should find for Plaintiffs on this issue.[7]

## V. COUNTS XI OF PLAINTIFFS' FAC: DEFAMATION

Due to page limitations and for purposes of brevity, Plaintiffs refer this Court to pages 20-25 of P.R. Memorandum for arguments related to the reconsideration of their defamation claims. Such discussion includes an overview of the Court's oversights of evidence and non-adherence to governing standards. For example, the Court overlooked evidence 1) that Barstool's audience interpreted Defendants' defamatory statements as true, and 2) showing that Defendants implied that Mr. Rapaport was a liar based upon disclosed but false facts. The later set of omissions is particularly significant given the Order's observation that calling someone a liar is capable of being proven true or false (ECF. No. 151 at fn 17).

---

[6] Instead of responding to Plaintiffs' arguments, Defendants argue that Plaintiffs' newly submitted evidence (which is unnecessary to a finding in Plaintiffs favor and is only presented to oppose the ridiculous presumption, which is completely refuted by the record, that Barstool would not attack its own employees) should not be considered. Although it is true that Keith Markovich is not a Defendant to this case, he did participate in the attacks against Mr. Rapaport and was the Editor in Chief at Barstool during its self-proclaimed "war" against him. (SOMF ¶¶22, 197-8).
[7] "In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden." *Alex v. GE*, No. 1:12-CV-1021 (GTS/CFH), 2014 U.S. Dist. LEXIS 75880, at *3 (N.D.N.Y. June 4, 2014)

9

Defendants respond to Plaintiffs' arguments by incorrectly suggesting that 1) it is irrelevant whether the public actually did understand interpret Defendants' statements as true[8], 2) Plaintiffs offered no evidence that Defendants' statements were perceived as true[9], 3) the falsity of Defendants' disclosed basis is irrelevant[10], and 4) that no evidence was presented of undisclosed facts[11]. Each of these arguments lack merit, and for the reasons stated in P.R. Memorandum, this Court should revive Plaintiffs' defamation claims and allow them to proceed to a jury.

## VI. CONCLUSION

For the reasons stated herein and in P.R. Memorandum, this court should grant the requested relief.[12]

---

[8] "A defamatory statement is one that exposes the plaintiff 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" *Aguirre v. Best Care Agency, Inc*., 961 F. Supp. 2d 427, 453 (E.D.N.Y. 2013). Although various tests exist for accessing whether a statement would be construed as factual, it is important to remember that such tests exist because there is generally a lack of evidence as to how an audience would interpret a statement. However, in situations like this, where the prevalence of public ridicule is irrefutable, the fact that such ridicule exists is absolutely relevant and should outweigh theoretical determinations (of which Plaintiffs disagree) of how an audience would interpret Defendants' statements.
[9] This is false. Plaintiffs offered extensive evidence, including expert reports, on how Defendants' statements were perceived as true by direct and secondary audiences. (*See e.g.,* SOMF ¶¶272-300, 321, 368-373; P-CS ¶354-359).
[10] Defendants improperly conclude that to the extent their defamatory statements were based on disclosed facts that such statements are protected as unactionable opinion. This is not so. "[I]f the predicate facts are disclosed but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity, the opinion may be an actionable 'defamatory opinion.'" *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016). Here, Defendants have argued that their defamatory assertions that Mr. Rapaport is a fraud were based upon disclosed facts which, as evidenced by Plaintiffs (*See e.g.* P-CS ¶¶40-41), were knowingly false. As such, Defendants statements, even if classified as opinion, are actionable for defamation.
[11] This is absolutely false. Plaintiffs offered extensive evidence, including expert reports, on how Defendants' statements were perceived as implying undisclosed facts. (*See e.g.,* SOMF ¶316; P-CS ¶¶305-310).
[12] Defendants argue that Plaintiffs' claims, if certified for interlocutory review, could not be reviewed without a fact-intensive understanding of the review. As noted above and in P.R. Memorandum, there are numerous legal issues that would require only minimal, if any, review of the record (e.g. a determination on whether misrepresentations about the ability of a party to perform under a contract are duplicative of related breach of contract claims).

| | |
|---|---|
| DATED: May 3, 2020 | **KING & BALLOW** |
| | By: /s/Richard S. Busch |
| | Richard S. Busch (SB 5613) |
| | *Attorney for Plaintiffs* |
| | *Michael Rapaport and Michael* |
| | *David Productions, Inc.* |
| | 1999 Avenue of the Stars, Suite 1100 |
| | Century City, CA 90067 |