**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------X
MICHAEL RAPAPORT and MICHAEL DAVID
PRODUCTIONS, INC.,

             Plaintiffs,

      - against -

BARSTOOL SPORTS, INC., ADAM SMITH,
KEVIN CLANCY, ERIC NATHAN, and DAVID
PORTNOY,

             Defendants.
---------------------------------------X
BARSTOOL SPORTS, INC.,

             Counterclaimant,

      - against -

MICHAEL RAPAPORT and MICHAEL DAVID
PRODUCTIONS, INC.,

             Cross-Defendants.
---------------------------------------X

**MEMORANDUM AND ORDER**

18 Civ. 8783 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Michael Rapaport and Michael David Productions, Inc. (together, "Rapaport") move under Local Rule 6.3 for reconsideration of the Court's March 29, 2021 Memorandum and Order denying Rapaport's motion for summary judgment and granting defendants Barstool Sports Inc. ("Barstool"), Adam Smith, Kevin Clancy, Eric Nathan, and David Portnoy's (together with Barstool, "Barstool Defendants") motion for summary judgment on Rapaport's fraud

and defamation claims.  See Rapaport v. Barstool Sports, Inc., No. 18 Civ. 8783 (NRB), 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) ("March Opinion").  In the alternative, Rapaport requests that the Court certify the issues he raises for an interlocutory appeal.

For purposes of this Memorandum and Order, the Court assumes familiarity with its prior decision, including the factual background described therein, and uses the same abbreviations contained in that opinion.  For the reasons below, Rapaport's motion is denied.

## LEGAL STANDARDS

Reconsideration of a prior decision is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation and internal quotation marks omitted).  A motion for reconsideration may not be used to introduce evidence that could have been presented in the original motion, "relitigat[e] old issues, present[] the case under new theories, secur[e] a rehearing on the merits, or otherwise tak[e] a 'second bite at the apple.'"  Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)); see De los

Santos v. Fingerson, No. 97 Civ. 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998).  In other words, "[a] motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" Salveson v. JP Morgan Chase & Co., 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) (quoting Simon v. Smith & Nephew, Inc., 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014)), aff'd, 663 F. App'x 71 (2d Cir. 2016).

Accordingly, "[t]he standard for granting [motions for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995), or "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted).  Ultimately, whether to reconsider a decision is "committed to the sound discretion of the district court." Marotte v. City of New York, No. 16 Civ. 8953 (GHW),

2017 WL 11105223, at *1 (S.D.N.Y. Oct. 6, 2017) (citation omitted).

Separately, under 28 U.S.C. § 1292(b), "a district court can certify a question for interlocutory appeal if the issue involves a controlling question of law as to which there is substantial ground for difference of opinion and if an immediate appeal from the order may materially advance the ultimate termination of the litigation." Murray v. Metro. Life Ins. Co., 583 F.3d 173, 176 (2d Cir. 2009) (alterations and internal quotation marks omitted). Interlocutory review is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals," and is "reserved for those cases where an intermediate appeal may avoid protracted litigation." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865-66 (2d Cir. 1996) (citation omitted). Moreover, district courts are afforded broad discretion in determining whether an interlocutory appeal is warranted. United States v. Cath. Health Sys. of Long Island Inc., No. 12 Civ. 4425 (MKB), 2021 WL 681085, at *5 (E.D.N.Y. Feb. 22, 2021) (citations omitted). "The party that seeks certification under section 1292(b) bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." In re Teva Sec. Litig., No. 17 Civ. 558 (SRU), 2021 WL 1197805, at *7 (D. Conn. Mar. 30, 2021) (citation omitted).

**DISCUSSION**

## I. Barstool's Breach of Contract Counterclaim

In his initial motion, Rapaport moved for summary judgment on Barstool's breach of contract counterclaim. As explained in the March Opinion, Barstool claims that it was justified in terminating the Talent Agreement immediately for cause and that it is accordingly entitled under the Talent Agreement to recover the $400,000 guarantee it paid to Rapaport minus Rapaport's 60% of the revenues generated by his podcast and Rant Videos. Rapaport challenged the claim on two grounds: (1) that Barstool lacked cause to immediately terminate the Talent Agreement; and (2) even if cause existed for the termination, Barstool could not establish damages because Rapaport's share of the relevant revenues exceeded $400,000. As set out in the March Opinion, we determined that there remained disputes of material fact concerning both issues and thus we denied Rapaport's motion for summary judgment. Rapaport, 2021 WL 1178240, at *6.

While Rapaport does not challenge the Court's finding as to termination, he seeks reconsideration of the Court's rejection of his alternative argument regarding damages. At bottom, the parties' dispute on this issue centers on whether the $417,646 "Lifetime Gross Ad Revenue" figure in the document reproduced below represents the total gross revenue

(as Barstool suggests) or <u>Rapaport's share</u> of the total gross
revenue (as Rapaport suggests).





As he did in his summary judgment motion, Rapaport
asserts once again that any reading of the document which
concludes that "Lifetime Gross Ad Revenue" means gross
advertising revenue as opposed to his share of the gross
revenue must fail because the "Remaining to Recoup" amount is
the exact difference between Rapaport's $600,000 guarantee

and the $417,646 figure.  While Rapaport may ultimately persuade the trier of fact that his interpretation is correct, he has not established that his reading is the only reasonable construction of the document.

Indeed, Barstool has proffered a reasonable alternative reading, namely the purported $417,646 listed as lifetime gross advertising revenue is the total revenue derived from Rapaport's podcast and Rant Videos.  While Barstool may not have been obligated to split any revenues with Rapaport until the podcast made over $666,666 and the Rant Videos made over $333,333, it is not inconceivable that Barstool——separate from its revenue splitting agreement——was tracking in this internal document how much revenue it had to bring in to break even on its $600,000 guarantee as the amount "Remaining to Recoup."  Moreover, under Rapaport's interpretation, the total lifetime advertising revenues would have been $696,077. However, that critically important figure is conspicuously missing from this revenue tracking document.

In the absence of further corroborating evidence and given that both sides presented plausible interpretations of the document at issue, this Court's decision to reserve the issue for the trier of fact is not remotely a basis for a motion for reconsideration.  See Stoner v. Young Concert Artists, Inc., No. 11 Civ. 7279 (LAP), 2013 WL 2425137, at *1

(S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case.  To do otherwise would be a waste of judicial resources.") (citation omitted).

## II. Rapaport's Breach of Contract Claim Based on Barstool's Good Faith Efforts to Promote His Content and Brand

Rapaport also moved for summary judgment on his claim that Barstool breached the Talent Agreement by not using good faith efforts to promote Rapaport's content and brand.  This claim concerns Barstool's alleged failure to secure advertisers for his Rant Videos and also that Barstool insulted him while he was under contract.  The Court denied Rapaport's motion, finding that Rapaport failed to sustain his burden to show that this was one of the exceptionally rare instances in which a party's alleged lack of good faith could be determined as a matter of law at the summary judgment stage.  Rapaport, 2021 WL 1178240, at *7-8.  In reaching that conclusion, the Court noted that Rapaport might face serious challenges in proving bad faith at later stages in this case, given that the parties shared a mutual interest in promoting Rapaport and profiting from Rapaport's content during the term of the Talent Agreement.

Again, on this aspect of his motion for reconsideration, Rapaport repeats the same arguments he initially presented without undermining the Court's reliance on the indisputable doctrine that questions of good faith are almost always questions of fact for the jury.[1]  And, yet again, Rapaport has not been deprived of the opportunity to persuade the trier of fact that Barstool, against its own economic interests, breached its contractual obligations to use good faith efforts to promote Rapaport.[2]  Rapaport's motion for reconsideration of the Court's denial of summary judgment on this issue is meritless.

---

[1]     Rapaport also attempts to put before the Court evidence of a dispute between Barstool and another one of its employees that became public in June 2020.  (See ECF No. 157.)  This evidence is—at best—of highly questionable relevance.  Regardless, at no time after June 2020, when Rapaport's motion was sub judice, did Rapaport ever seek leave to supplement the record with this evidence.  Rather, he decided to await the Court's ruling and then claim that the Court should reconsider that ruling in light of evidence that he believes would help his case yet sat on for months.  That is an abuse of the adjudicative process and simply not how the system works.

[2]     As explained in the March Opinion, Barstool claims that, despite its efforts, it had difficulty securing advertisers for Rapaport's Rant Videos due to their unpredictable and vulgar nature.  And, with respect to Barstool's insults, Rapaport takes an unreasonably myopic view of the record in claiming that they establish a lack of good faith promotional efforts as a matter of law.  Significantly, Rapaport acknowledges that Barstool promotes itself and its associated content through controversy (see, e.g., PCSOMF ¶¶ 23, 96, 100) and even admits that he attacked Barstool employees over social media and participated in public feuds with those employees for promotional purposes while under contract with Barstool (see, e.g., id. ¶¶ 42, 43, 87; Rapaport Decl. (ECF No. 112) ¶¶ 35-36).  Thus, while a reasonable jury could agree with Rapaport's argument that Barstool's insults breached its contractual duty to promote Rapaport and his brand, the jury might also plausibly conclude on this record that both Barstool and Rapaport traded insults and engaged in public feuds for promotional purposes to drive audiences to their content and enhance their brands.

## III. **Fraud**

Both parties moved for summary judgment on Rapaport's fraudulent concealment and fraudulent inducement claims. These claims are premised on Barstool's alleged misrepresentations about the status of its negotiations with Sirius as they relate to Barstool's obligation under the Talent Agreement to use good faith efforts to search for opportunities for Rapaport to host a weekday show on some media platform——Sirius or otherwise.

In its summary judgment motion, Barstool argued that these fraud claims impermissibly duplicated Rapaport's breach of contract claim concerning this good faith obligation. In deciding this issue, the March Opinion explained that under well-established New York law a fraud claim will not duplicate a breach of contract claim only if the plaintiff can establish (1) that the misrepresentations were extraneous to the contract, (2) that the defendant had a duty to disclose, or (3) that special damages existed. Rapaport, 2021 WL 1178240, at *9-10 (citations omitted). As Rapaport did not establish that any of these conditions applied, the Court granted Barstool's motion. See id.

Rapaport now offers three broad arguments for why he believes the Court erred. We consider each in turn.

### A. Extraneous Representations

In the March Opinion, we found that the various representations at issue about negotiations with Sirius were duplicative of Rapaport's breach of contract claim on the ground that they were subsumed into Barstool's obligation under the Talent Agreement to "use good faith efforts to secure an opportunity for [Rapaport] to produce and host a 1-2 hour, weekday ... show in a format to be agreed upon by the parties (e.g., a Sirius radio show, a terrestrial radio show, a podcast, a video series)." Id. at *6, 9-10.

As explained in the March Opinion, this conclusion was buttressed by the fact that this contractual language was added at Rapaport's request after it became clear to him that Barstool's negotiations with Sirius remained tentative and were progressing slowly, and also after Barstool proposed removing any mention of a guaranteed Sirius show from the draft Talent Agreement. Rapaport, with the assistance of counsel and having negotiated the "good faith" clause, then decided to enter into the Talent Agreement, which actually imposed no obligation to provide Rapaport with a show——on Sirius or otherwise.

In support of reconsideration, Rapaport again offers the exact same arguments he presented at the summary judgment stage but now adds a series of citations that are wholly

irrelevant to the facts of this case. This, in the first instance, is not a proper basis for a motion for reconsideration. See Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (On a motion for reconsideration, the moving party "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.").

In any event, at most, the newly cited cases stand for the largely unremarkable proposition that a party's misrepresentation about its present inability to perform its contractual obligations may give rise to a fraud claim. As Barstool never misrepresented that it was capable of performing contractual obligations that it presently could not, these cases are easily distinguishable.[3] Thus, for

---

[3]    Cf. KCG Americas LLC v. Brazilmed, LLC, No. 15 Civ. 4600 (AT), 2016 WL 900396, at *4 (S.D.N.Y. Feb. 26, 2016) (misrepresentation that a party presently "could pay" legal fees distinct from breach for failure to pay legal fees); Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni, No. 15 Civ. 9003 (LTS) (SN), 2017 WL 3726754, at *2, 5 (S.D.N.Y. Aug. 28, 2017) (misrepresentation that a party presently had access to funds that could allow it to make payments on a promissory note distinct from breach of the promissory note); Wild Bunch, SA v. Vendian Ent., LLC, 256 F. Supp. 3d 497, 501, 506 (S.D.N.Y. 2017) (misrepresentations about a party's present ability to invest $3 million in a motion picture project without further approvals or contingencies distinct from breaching contract for failure to provide financing); Fung-Schwartz v. Cerner Corp., No. 17 Civ. 233 (VSB), 2019 WL 4393022, at *5 (S.D.N.Y. Sept. 13, 2019) (misrepresentations about a party's present capability to timely process medical billing and reimbursement tasks distinct from breaching contract for failure to timely perform those functions); Coughlan v. Jachney, 473 F. Supp. 3d 166, 193-98 (E.D.N.Y. 2020) (dismissing fraud claims but suggesting that a party's misrepresentation about its present ability to meet contractual deadlines might not duplicate breach of contract claims); Man Advisors, Inc. v. Selkoe, 101 N.Y.S.3d 843 (N.Y. App. Div. 2019) (misrepresentations about a loan guarantor's other guarantees and prior

example, there is nothing in the record that suggests that Barstool had no ability to search for opportunities for Rapaport to host a weekday radio show (on Sirius or some other platform) or that it lacked the funds or the capability of securing funds to pay for the $375,000 show fee should that show come to fruition. Instead, the record demonstrates that the supposed misrepresentations underlying Rapaport's fraud claims about timing and preconditions for securing a show are covered by the good faith provision in the Talent Agreement, and thus Rapaport's fraud claims duplicate his breach of contract claim concerning that same provision. Accordingly, Rapaport has failed to establish that he is entitled to reconsideration of the Court's decision on these grounds.

### B.    Duty to Disclose

In his motion for summary judgment, Rapaport also argued——in an effort to fall within the second exception to the contract-fraud doctrine——that Barstool had an independent duty to disclose information about its negotiations with Sirius. While Rapaport now argues on reconsideration that Barstool had a duty to disclose under both the special facts doctrine and the misleading partial disclosure doctrine, a review of the entirety of Rapaport's briefing in support of

_____

defaults as it related to creditworthiness are distinct from breach of the guarantee).

summary judgment shows that he chose to rely solely on the special facts doctrine:

> **B. Barstool Had a Duty to Disclose Material Information to Plaintiffs**
>
> A duty to disclose can arise "where the 'special facts doctrine' exists, in which one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Ruel v. McGrath*, 2013 U.S. Dist. LEXIS 202738, at *20-21 (N.D.N.Y. June 19, 2013). Because Plaintiffs were not participants in Barstool's negotiations with Sirius, Barstool had vastly superior knowledge compared to Mr. Rapaport about information that he was unable to acquire. Barstool also knew that Plaintiffs were relying upon the information it provided. (SOMF ¶123). As such, Barstool had a duty to disclose material information regarding its communications with Sirius to Plaintiffs.

> Barstool has also attempted to sidestep liability for its fraudulent omissions by arguing that Barstool did not owe a duty to disclose the omitted information. However, under the special facts doctrine, Barstool had a duty to disclose the circumstances of its ability to acquire Mr. Rapaport a Weekly Show as Barstool "possesse[d] superior knowledge, not readily available to [Plaintiffs], and kn[ew] that the other is acting on the basis of mistaken knowledge." *Ruel v. McGrath*, 2013 U.S. Dist. LEXIS 202738, at *20-21 (N.D.N.Y. June 19, 2013). Even if Barstool was not required to disclose the line by line details of its contract with Sirius, it was still required to provide material information to Plaintiffs about its ability to provide Mr. Rapaport with a Weekly Show.

Based on the above, it is evident that Rapaport has forfeited any duty to disclose argument based on misleading partial disclosures or half-truths, and he may not now attempt to resuscitate that line of argument on reconsideration. See Analytical Surveys, Inc., 684 F.3d at 52.

With respect to the special facts doctrine, Rapaport yet again presents the same arguments that we fully considered and rejected in the March Opinion. While he disagrees with our application of the special facts doctrine case law, he does not present any cases or evidence that we may have overlooked, and thus he impermissibly attempts to use his motion for reconsideration as a substitute for an appeal. Massop v. U.S. Postal Serv., 493 F. App'x 231, 232 (2d Cir. 2012).

In any event, we remain unpersuaded by Rapaport's arguments. As recently explained by the Second Circuit, for a duty to disclose to arise under the special facts doctrine, a plaintiff must demonstrate that the defendant "knows that [plaintiff] is acting on the basis of [this] mistaken knowledge." Mariano v. CVI Invs. Inc., 809 F. App'x 23, 27 (2d Cir. 2020) (summary order) (citations omitted). However, a plaintiff may not claim that it acted on the basis of mistaken knowledge when it concerns an issue that "was expressly considered . . . under the thoroughly negotiated contractual agreements," especially when "the relevant contract contained a provision expressly disclaiming any reliance on oral representations." Id. (citations omitted).

Here, as thoroughly analyzed in the March Opinion, Rapaport's actions betray his claim. As discussed above,

knowing that Barstool was still in negotiations with Sirius far beyond Barstool's earlier stated predictions, Rapaport, with the assistance of counsel, entered into the fully integrated Talent Agreement that never required Barstool to provide Rapaport with a Sirius show at all. Instead, at Rapaport's insistence, the parties added a provision to the Talent Agreement that simply required Barstool to use good faith efforts to explore opportunities for Rapaport to host a show on some platform. Accordingly, Rapaport cannot now claim that Barstool knew that he was relying on some aspect of the Barstool-Sirius negotiations in entering to the Talent Agreement as written when the Talent Agreement never included any guarantee of a Sirius show⸺or any show⸺for Rapaport. That is especially true given that Rapaport agreed that the Talent Agreement "expresses the entire understanding between the parties" and "replaces any and all former agreements, negotiations or understandings, written or oral, relating to the subject matter" of the Talent Agreement. Talent Agreement at 5; see Mariano, 809 F. App'x at 27 (citation omitted).

### C. Special Damages

Rapaport finally claims that the Court overlooked the arguments he presented on establishing special damages. Below, we replicate the four sentences that represent the

totality of what Rapaport argued about fraud damages in his summary judgment briefing:

> **E. Plaintiffs Suffered Damages as a Result of Barstool's Omissions**
>
> Barstool's omissions caused significant harm to Plaintiffs' ability to promote their content and brand. (SOMF ¶157).

> Plaintiffs' fraud claims take issue with Barstools omissions and misrepresentations relating to 1) the progress of and efforts made towards such an agreement being entered into and 2) surrounding requirements that would need to be met before Barstool was able to provide Mr. Rapaport with a Weekly Show. In this vein, the evidence provided in support of Plaintiffs' fraud claims, as well as the damages sought and recoverable under those claims, are distinct from Plaintiffs' breach of contract claims.[40]

> Plaintiffs have also evidenced having had a superior offer available to them through CBS that they would have taken if not for Barstool's fraud, as well as other offers available to them at that time. (P-COMF ¶¶161; 346).

These four sentences did not even articulate an argument that required a response. A litigant may not toss such threadbare recitals in a brief, lose its motion on the grounds actually argued, and then use a motion for reconsideration to finally formulate a coherent argument and claim that the court overlooked it. And, while Rapaport has indisputably forfeited his arguments on special damages, the theories he now attempts to explain for the first time in his motion for reconsideration are nevertheless unavailing.

Under New York law, special damages "arise in consequence of a breach and seek to compensate a plaintiff

for losses other than the diminished value of the promised performance"; they must "flow directly and proximately from the fraud" and "[t]he circumstances giving rise to such damages must reasonably be anticipated at the time the contract was made." Great Earth Int'l Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 429-31 (S.D.N.Y. 2004) (citations omitted). They are, in other words, "consequential damages[] or out-of-pocket pecuniary losses as a result of reliance on the alleged misrepresentation." IOP Cast Iron Holdings, LLC v. J.H. Whitney Cap. Partners, LLC, 91 F. Supp. 3d 456, 479 (S.D.N.Y. 2015) (citation and internal quotation marks omitted).

First, Rapaport now attempts to articulate the argument that but for Barstool's alleged fraud he never would have signed the Talent Agreement with Barstool and would have instead negotiated and entered into a superior deal with another media company. However, New York law does not recognize as special damages "the loss of an alternative bargain overlooked in favor of the fraudulent one," such as "accept[ing] a job with a different employer," as this theory of damages is "inherently speculative and undeterminable."

<u>Geary v. Hunton & Williams</u>, 684 N.Y.S.2d 207, 207 (N.Y. App. Div. 1999) (listing cases).[4]

Second, Rapaport claims that we overlooked his damages expert's opinion that special damages for fraud are coextensive with Rapaport's supposed defamation damages. While Rapaport has now twice failed to explain how this theory finds any support under New York law or as a matter of logic, it is impossible to give credence to the notion that defamation damages flow from the entry of a contract.

*     *     *

In summary, Rapaport attempts to rely on arguments that we already considered and denied in the March Opinion or to introduce new arguments for the first time on a motion for reconsideration. These are not grounds to grant the extraordinary relief he seeks and thus his motion is denied as to the fraud claims.

---

[4]    To the extent that Rapaport claims that a potential deal he may have explored with CBS was specific and not speculative, he admits that CBS declined to match Barstool's offer and therefore, at the time Rapaport entered into the Talent Agreement with Barstool, there was no alternative CBS offer. (<u>See</u> PCSOMF ¶¶ 32-33, 161 (citing Suppl. Decl. of Jordan Winter (ECF No. 143) ¶ 4)); DCSOMF ¶ 32.) Accordingly, no such alternative offer from CBS existed at the time the alleged fraud was completed and thus it is too speculative to claim it as the basis of special damages under New York law. Indeed, to find otherwise would lead to the incongruous result of allowing Rapaport to simultaneously recover the benefit of the bargain under the Talent Agreement on a contract theory <u>and</u> the benefit of the bargain of an alternative contract premised on a fraud theory.

## IV. **Defamation**

We finally turn to Rapaport's defamation claims.  In the March Opinion, we applied well-settled New York law and held that Rapaport failed to sustain his burden to demonstrate that the allegedly defamatory statements he identified would have been understood by reasonable audiences as statements of fact conveyed for their accuracy as opposed to statements of opinion.  Rapaport, 2021 WL 1178240, at *10-22.  Disagreeing with our conclusion, Rapaport submits four arguments in support of his motion for reconsideration.  We address each in turn.

### A. **Comments Made in Online Fora**

A significant number of the statements that Rapaport challenged appeared in online fora, such as Twitter and blogs.  In analyzing these statements, we noted the clear trend in cases interpreting New York law that recognizes that a statement's publication on blogs or social media may signal to reasonable audiences that what they are reading is likely to be a statement of opinion as opposed to an actionable statement of fact.  See id. at *12, *19 (listing cases).  While not dispositive, this factor contributed to the Court's conclusion that statements at issue published in tweets and blogs were not actionable.

Rapaport contends, as he did in his summary judgment papers, that this consideration should only extend to online statements "made by anonymous and pseudo-anonymous individuals," and not the tweets and blog posts at issue here that were published by Barstool employees.

Rapaport raises a distinction that does not exist in the case law, a fact that he would have appreciated had he carefully read the cases cited by the Court. Most notably, Rapaport appears to have overlooked that the defendant in Jacobus v. Trump, which the Court discussed at length, was Donald J. Trump, the former President of the United States, and that the statements at issue in that case were tweets Trump published under his name to tens of millions of followers as he was campaigning for president. 51 N.Y.S.3d 330, 339 (N.Y. Sup. Ct. 2017). As the Jacobus court noted in dismissing defamation claims arising from the tweets, statements published on social media, such as Twitter, are "increasingly deemed to attract less credence to allegedly defamatory remarks than other contexts." Id. (citation and internal quotation marks omitted). That decision was affirmed on appeal. 64 N.Y.S.3d 889 (N.Y. App. Div. 2017) ("The immediate context in which the statements were made would signal to the reasonable reader or listener that they were opinion and not fact.") (citation omitted). Jacobus is

far from the only example of courts applying this principle to tweets and blog posts published with non-anonymous attribution,[5] and thus we remain unconvinced by Rapaport's argument and hold that it is not a basis for reconsideration.

### B.    Search Engines and Negative Podcast Reviews

Rapaport next argues that we erred by not considering as part of our analysis that: (1) when entering "Michael Rapaport" on the search engine Bing, it suggests "Michael Rapaport herpes" under "related searches"; and (2) following publication of the challenged statements, listeners left thousands of negative reviews on the Apple Podcasts platform about Rapaport's podcast that stated that Rapaport has herpes and called Rapaport a racist, fraud, abuser, stalker, among other labels.

We did not find this argument compelling, or even particularly relevant, to the threshold legal inquiry of whether a given statement would objectively be understood by a reasonable audience as conveying a statement of opinion or a statement of fact.  And, while Rapaport attempts to use his

---

[5]    For instance, Rapaport also seems to have missed the significance of the Court's citations to <u>Ganske v. Mensch</u>, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020), which involved tweets made by a former member of Britain's Parliament on a Twitter account for the blog she runs that is publicly associated with her, or to <u>Wexler v. Dorsey & Whitney LLP</u>, 815 F. App'x 618, 622 (2d Cir. 2020) (summary order), which concerned a blog published on a well-known law firm's website that included a byline attributed to one of its attorneys.

motion for reconsideration as an opportunity to expand on his arguments, we remain unpersuaded.  To make it clear: an opinion is an opinion.  As a matter of logic, just because a statement of opinion was repeated by a third party does not magically transform that opinion into an actionable statement of fact, and Rapaport offers no authority to the contrary. Accordingly, we reject the view that Bing's suggestions of related searches for "Michael Rapaport" or Apple Podcast reviews that repeated Barstool's insults would change the fundamental nature of the fact/opinion inquiry under New York law or in any way alter our conclusion in the March Opinion. This argument, too, is therefore not a basis for reconsideration.

### C. The Barstool Defendants' "Inside Look" into Rapaport's Behavior

Rapaport next argues that the Court failed to consider his argument that the challenged statements were defamatory because the Barstool Defendants supposedly had an "inside look" into Rapaport's life.  As before, Rapaport never tethers this argument to any specific statement, let alone analyzes whether such a statement would reasonably imply that the speaker is conveying a defamatory fact based on his purportedly secret "inside" knowledge of Rapaport's antics. That Rapaport failed to contextualize this unmoored argument

at the summary judgment stage, much less meet his burden of showing that it makes a challenged statement actionable, is not tantamount to the Court overlooking his argument. Accordingly, this argument does not present any grounds for reconsideration.

### D. Labeling Rapaport a "Fraud" Based on Bets with Smith

Rapaport finally claims that the Court did not address his argument that certain statements were defamatory "mixed opinions" under New York law because they were based on a published record that the Barstool Defendants supposedly knew to be false. While Rapaport decided to relegate this argument to a footnote, the Court did, in fact, consider and impliedly reject it in a footnote in the March Opinion. Rapaport, 2021 WL 1178240, at *14 n. 19.

While his footnoted argument hardly warrants it, we will briefly expand on our rejection of this argument. Rapaport specifically takes issue with two blog posts in the "Michael Rapaport is a Fraudulent Sack of Shit" series, which deal with fantasy football and amateur boxing bets involving Rapaport.

In challenging the representations made in these blog posts about Rapaport being "a fraudulent sack of shit," Rapaport submitted an affidavit that stated in sum and

substance that the premises of the blog posts were false
because the underlying bets were never consummated. (See
Suppl. Decl. of Michael Rapaport (ECF No. 144) ¶¶ 2-15.)

We do not understand this affidavit to establish the
falsity of the blog posts in question. That is because the
bets not being consummated is precisely the point being made
in the blog posts. The first ".Michael Rappaport is a
Fraudulent Sack of Shit" post summarizes how Rapaport refused
to follow through with a bet that he initially proposed to
Smith on Twitter, and "Michael Rappaport is a Fraudulent Sack
of Shit - Part II" details how Rapaport failed to fulfill the
preconditions of a second bet with Smith that Rapaport had
proposed.[6] As Rapaport did not establish the falsity of the

_____

[6]     In fact, Rapaport confirmed the underlying bases of these
blogs in two radio appearances. With respect to the first "Fraudulent
Sack of Shit" blog, Smith states that he sent Rapaport an invitation for
a bet on DraftKings after Rapaport challenged Smith to wager a week's
salary on a fantasy football match and that Rapaport backed out of the
bet by refusing to accept the DraftKings invitation. Rapaport conceded
on his Sirius XM Fantasy Sports radio show (audio of which was reproduced
in the blog post) that he did indeed challenge Smith to a fantasy football
bet for a week's salary, that he received Smith's invitation for a $2,000
fantasy football bet on DraftKings, and that he ultimately declined to
accept it because he did not want to play for that much money and because
he feared that Smith might try to cheat. The blog further detailed, using
Rapaport's and Smith's tweets, how Rapaport later tweeted that he would
pay Smith $1,000 if Smith posted the fantasy football lineup that he used
for the $2,000 DraftKings invitation. Smith responded by tweeting the
lineup and claimed in the blog that Rapaport never paid him. Based on
this series of events, Smith opined in the blog post that Rapaport is a
"fraudulent sack of shit," not good for his word, and a "bitch."

As for the second "Fraudulent Sack of Shit" blog, it catalogs how
Rapaport challenged Smith on Twitter to another $2,000 bet for an upcoming
amateur boxing match and said in a tweet that the money to fund his side
of the bet would be brought Barstool's headquarters on February 14. On
the afternoon of February 14, Rapaport again appeared on a radio show in
which he attempted to change the terms of the bet and stated that he would

record presented in the blog posts, he failed to meet his burden of showing that the statements were defamatory "mixed opinions" under New York law.

## V. Interlocutory Appeal

As an alternative to reconsideration, Rapaport requests that we certify each of these issues for interlocutory appeal. As discussed above, the movant bears an extraordinary burden in justifying a request for an interlocutory appeal. In support of this exceptional relief, Rapaport does little more than tack on a request for interlocutory review at the end of his other arguments without citation to case law or any elaboration for why this exceptional form of relief would be justified. He fails to meet his burden and thus his request for interlocutory appeal is denied.

## CONCLUSION

For the reasons stated above, Rapaport's motion is denied.

---

not bring the funds to Barstool's headquarters that day, which caused Smith to call off the bet and further opine about Rapaport being a "fraudulent sack of shit." _See_ Blockhead Smitty vs. Michael Rapaport, Barstool Radio (Feb. 14, 2018), https://www.barstoolsports.com/video/936381/blockhead-smitty-vs-michael-rapaport.

The Clerk of Court is respectfully directed to terminate the motion currently pending at ECF No. 155.

**SO ORDERED.**

Dated:    New York, New York
          June 25, 2021

                                         NAOMI REICE BUCHWALD
                                 UNITED STATES DISTRICT JUDGE